In the Matter of FLORELL EQUITIES, INC., Respondent, against ROBERT C. WEAVER, as State Rent Administrator, Appellant.

First Department, November 27, 1956.

*Beatrice Shainswit* of counsel (*Nathan Heller,* attorney), for appellant.

*Robert S. Fougner* of counsel (*Eugene J. Morris, Albert W. Fribourg* and *Matthew J. Domber* with him on the brief; *McLaughlin & Fougner,* attorneys), for respondent.

*Per Curiam.* The commission has adopted a regulation (Part II, Amendment No. 50, to State Rent and Eviction Regulations, § 33, subd. 5) reading as follows: " No landlord shall be eligible to file an application under this paragraph on and after February 1, 1956 unless he has been the landlord of such property for at least one year."

The regulation was adopted to implement the statute providing for hardship increases (State Residential Rent Law, § 4, subd. 4, par. [a]; L. 1946, ch. 274, as amd. by L. 1955, ch. 685) which reads as follows: " Provision shall be made pursuant to regulations prescribed by the commission, for individual adjustment of maximum rents where (1) the rental income 'from a property yields a net annual return of less than six per centum of the valuation of the property."

It will be noted from the statute that the prescribed adjustment is related to the rental income earned by the property, rather than by an individual landlord. No words of limitation or distinction confining the right to such an adjustment to a particular owner are used.

The commission is undertaking to hamstring itself by this regulation. It will perforce be required to deny even the most meritorious application based upon authenticated proof verified by its own staff of accountants and experts by the mandatory condition precedent of ownership for at least one year. Contrary to the statutory intent, the challenged regulation attempts to impose an arbitrary standard that would preclude

both bona fide and suspect applications for adjustments. Conversely, the regulation may well defeat the purpose of the statute which seeks to prevent speculative or manipulative practices, by encouraging owners of newly acquired property, who are precluded from seeking a hardship increase for an entire year to engage in inefficient management during that period for the purpose of obtaining rent adjustments.

The commission has the power, absent the regulation under attack, to satisfy itself as to the *bona fides* of the application by its requirements for the submission of proof of a full year's operation, whether it be upon the experience of the applicant or of a prior owner.

It was argued that the regulation merely postpones the owner's right to a rent adjustment. Since the adjustment cannot be retroactive prior to the date of the order, that argument is specious. (*Levy* v. *1165 Park Ave. Corp.*, 280 App. Div. 912, affd. 305 N. Y. 607; *Matter of Gostin* v. *Weaver*, 2 A D 2d 837.) When, in addition, there is taken into consideration the delay occasioned by the processing of an application for a rent adjustment, the owner entitled to an increase would be prevented from receiving it, under the regulation, for a period varying from one year and four months to as long as two years.

We have held heretofore that the use of the operating expenses incurred during the test year by a former landlord was consistent with the statute (*Matter of De Varco* v. *Temporary State Housing Rent Comm.*, 281 App. Div. 955). We must therefore hold that the regulation exceeds the power given to the commission and is an attempt to usurp the functions of the Legislature.

The order at Special Term should be affirmed.

BREITEL, J. P. (dissenting). Special Term annulled an order of the Temporary State Housing Rent Commission denying a protest challenging subdivision 5 of section 33 of its regulations. The purport of the challenge amendment is that a landlord who seeks an increase in maximum rents, because of hardship, that is, a return of less than 6% on the property, may not make application unless such landlord has been the owner of the property for at least one year.

Special Term held that the commission was without authority to adopt such a regulation and that its effect is to deprive the landlord of a right granted by the statute.

This court is affirming Special Term and I am constrained to dissent, and vote to reverse and to dismiss the petition.

The amendment was adopted early this year and took effect February 1, 1956. With respect to the so-called hardship increases, it provided: " No landlord shall be eligible to file an application under this paragraph on and after February 1, 1956 unless he has been the landlord of such property for at least one year.'' (State Rent and Eviction Regulations, § 33, subd. 5.) Concededly, until this time, and since the inception of residential rent control, a landlord was entitled to make application for a hardship increase at any time — even one day after he had purchased the property. Indeed, the commission's exercise of judgment in entertaining such an application was sustained in the case of *Matter of De Varco* v. *Temporary State Housing Rent Comm.* (281 App. Div. 955). In sustaining such exercise of judgment, this court said: " The Rent Administrator was entitled to consider the experience in the preceding year under the previous ownership in determining the net return. His construction of the statute is a reasonable one.'' Obviously, the court was not holding that this was the only reasonable construction to be applied to the statute.* Moreover, in any event, the construction of the statute turned merely on whether the commission had power to fix which experience should be used as a base, namely, the experience of the property or the experience of the particular owner. Until now, in the exercise of its judgment, it had chosen the experience of the property. There was no suggestion in the holding in the *De Varco* case that the commission's " discretion '' could be exercised in only one way — or only once. Now, by a similar exercise of judgment, and the adoption of a regulation advising all concerned, it has determined to use the experience of the particular owner. The issue for the court to decide is not the economic justification for the commission's action, but whether under the statute it has the power to exercise its discretion and whether it has done so on any reasonable basis.

The Rent Commission is perhaps unique among State agencies in the scope of regulation-making power conferred on it by the Legislature. In the legislative history, and in the present statute, there is evidence, with regard to many particulars, of the intention to confer a broad regulation-making power limited only by the constitutional restraint against the delegation of legislative power. So, in the 1950 statute, the commission was required to draft a rent control plan and adopt regulations implementing such plan. These regulations were

---

* It is interesting that in the *De Varco* case, the application had been made several months before the sale, and the new owner was resting on his predecessor's pending application.

to be transmitted to the Legislature a minimum period before they would take effect. Then, in the event the Legislature failed to adopt a joint resolution annulling any of them, the regulations would become effective (State Residential Rent Law, § 4, subd. 2, par. [c]; L. 1946, ch. 274, as amd. by L. 1950, ch. 250).

All through the several re-enactments of the State Residential Rent Law (L. 1946, ch. 274, as last amd. by L. 1955, ch. 685), there have been contained not one, but many, provisions conferring on the commission power to adopt rules and regulations to effectuate the purposes of the act. (*People ex rel. McGoldrick* v. *Sterling*, 283 App. Div. 88.) The repetition is further evidence of the intention to assure the presence of power to meet changing conditions or to exercise flexibility in meeting existing conditions, as may be deemed advisable, by the commission, from time to time.

Thus, in the very section and subdivision which confers power on the commission to grant hardship increases, the introductory paragraph reads: '' The commission may from time to time adopt, promulgate, amend or rescind such rules, regulations and orders as it may deem necessary or proper to effectuate the purposes of this act, including practices relating to recovery and possession '' (§ 4, subd. 4, par. [a]).

Clause (1), which relates to applications for rent increases based on the insufficiency of the net annual return, is immediately preceded by the language of the introductory paragraph: '' Provision shall be made pursuant to regulations prescribed by the commission, for individual adjustment of maximum rents where ''.

But this is only the beginning, in this section, of the repeated conferring on the commission of regulation-making power. Subdivision 5 contains two such provisions. Subdivisions 6 and 7 each contains a regulation-making power. In subdivision 5 it is provided that: '' Whenever in the judgment of the commission such action is necessary or proper in order to effectuate the purposes of this act, the commission may, by regulation or order, regulate or prohibit speculative or manipulative practices   *   *   *   which in the judgment of the commission are equivalent to or are likely to result in, rent increases inconsistent with the purposes of this act ''.

Subdivision 6 provides: '' Any regulation or order issued pursuant to this section may be established in such form and manner, may contain such classifications and differentiations   *   *   *   as in the judgment of the commission are necessary or proper ''.

Lest the foregoing not be enough, subdivision 7 contains the following provision: "Regulations, orders, and requirements under this act may contain such provisions as the commission deems necessary to prevent the circumvention or evasion thereof."

We thus find in the statute repeated reference to the power to adopt regulations, with language purporting to negative limitations and stressing breadth of the grant. The power to adopt regulations is phrased in a large variety of ways. The power is tied to particular practices; to particular functions of the commission; to indirect means by which the purposes of the act or the efforts of the commission might be undermined; to classifications, differentiations, in the event that none is contained in the statute; and, lastly, in the event that anything missed the net already woven, it is provided that regulations could be made to prevent that which might circumvent or evade the statute. In clear language, the power is conferred, not only to adopt policy by regulation, but also, to modify and adapt policy by regulation. Always the judgment and the discretion of the commission, within statutory limits, are to determine the desirability and the need for any change (§ 9, subd. 2).

The situation with this agency is completely unlike that, for example, involving the State Liquor Authority where the power to adopt regulations is sharply limited to specific provisions of the statute. (See, generally, Alcoholic Beverage Control Law; cf. *Matter of Kaplan* v. *O'Connell,* 281 App. Div. 46, affd. 305 N. Y. 850.)

Now it is appropriate to turn to the statute itself insofar as it refers to the so-called "hardship" increases. The statute, in paragraph (a) of subdivision 4 of section 4, provides that: "Provision shall be made pursuant to regulations prescribed by the commission, for individual adjustment of maximum rents where (1) the rental income from a property yields a net annual return of less than six per centum of the valuation of the property." The first thing immediately evident is that the provision for individual adjustment shall be made pursuant to regulations. This means, of course, a power to prescribe more than merely the form that such application should take.

The next thing also evident is that while the income is referred to as derived from "a property" it also refers to the income being yielded. While it may be argued, as it was argued in the *De Varco* case (281 App. Div. 955, *supra*) that, therefore, the commission was entitled to look to the property as the base, it can be argued with equal force that an income is yielded to the owner. It is the owner who suffers the insufficiency of income.

It is the owner whose experience determines whether or not he has had an insufficiency of income. The reference in the statute to rental income yield and net annual return are terms related or relatable to an owner. A property, except in an abstract, and even legitimately abstract, sense, has no income yield, or annual return. It is the owner who has these things from a property.

More importantly, it is the owner who, to a large degree, may control the size of the income derived from a property. If, in the *De Varco* case, the commission had insisted upon using the owner's experience, rather than the experience of the property, as the base upon which to determine insufficiency of income, it is hardly likely that the court would have held such an exercise of judgment inconsistent with a reasonable construction of the statute. So, there is nothing in the literal language of the statute which requires the commission to follow one application of policy rather than another. This distinguishes the situation here from that which faced this court in construing the proposed regulation in *Matter of 340 East 57th St.* v. *Weaver* (3 Misc 2d 356, affd. 2 A D 2d 678). Nor is there anything in the statute which requires the commission to adopt an unchanging policy. On the contrary, the emphasis is on flexibility.

When we go beyond the literal language of the statute there is basis, and reason too, for taking the experience of the owner rather than the experience of the property. This does not mean, again, that the commission is bound to take one view or the other, but, rather, that it may take one view or the other, depending upon the exercise of judgment and discretion imposed on it by the law. A new owner who has just purchased a property suffers no hardship because in the preceding year the property yielded less than 6% net annual return to his seller. If anything, the price he paid may have been somewhat smaller because of that circumstance. True, he may face, if the conditions do not change, a future hardship if the property should continue to earn less than 6% of the value. But, until he has had experience with that property he does not know whether, although he may believe, he will suffer a hardship by the way of insufficiency of income. In requiring a minimum of one year's experience, the commission is taking the normal fiscal period for judging that experience. Note that the statute refers to '' net annual return ''. A longer period might be unreasonable, as might a shorter period, but in economic society, a one-year period, generally, is the basis upon which we determine whether an asset yields a profit or suffers a loss.

If the commission is satisfied that permitting new landlords to make immediate applications for hardship increases may develop, or does develop, a speculative or manipulative practice with regard to transfers of residential housing, it is not the function of the court to quarrel with that exercise of judgment. Nor does it suffice to say that the commission can accomplish as much by handling each application on an individual basis. The purpose of the regulation — this particular regulation — is not to prevent unjust increases to landlords but to discourage speculative purchases based upon immediate rent increase applications. To this it is no answer that, after the damage is done, the commission can pass on individual applications.

To the argument that the proposed regulation may freeze the status of a low-yielding property for at least a year, there is a simple answer. There was nothing to stop the prior owner, the seller of the property, from making an application for a hardship increase during any time while he still owned the property. Moreover, the new owner, who has just invested his capital, does not find himself frozen in status except by his own choice, newly made. Certainly, the commission is entitled by regulation and classification to say that such an owner suffers no " hardship " as of that early time.

Apart, perhaps, from the precise issue involved in this case, there is a further and serious danger arising from the interpretation that Special Term has given, and this court proposes to give, to the commission's power to adopt regulations. If the commission is to have power to adopt regulations only which duplicate, in effect, the exact language of the statute, the very purpose in conferring this broad power of regulation-making will have been completely frustrated. In addition, the flexibility of the commission, in utilizing its own experience and in meeting changing conditions, will be seriously hampered. Never to be lost from sight is the critical responsibility of the commission to discourage speculative practices which develop a spiral tendency, producing in turn, spiraling of rents and property prices interchangeably. It is one of the factors that gave such grave concern to the commission and which it sought, unsuccessfully, to meet with respect to bona fide sale prices in *Matter of 340 East 57th St. v. Weaver* (3 Misc 2d 356, affd. 2 A D 2d 678, *supra*). Not only is the prevention of that condition within the power of the commission, but it is the essence of its duty repeatedly mandated in the statute. Such was not the purpose of the Legislature, as indicated by the legislative history to which adversion was earlier made or by the language of the statute as it now reads. The situation here is completely unlike that of *Matter of*

*340 East 57th St.* v. *Weaver* (*supra*) where the commission sought to strip itself of the discretion mandated on it by the statute with regard to examining the *bona fides* of a purchase price offered by a landlord in his application for a rent increase in lieu of the assessed valuation.

For all of these reasons, I dissent and vote to reverse the order of Special Term, and to dismiss the petition, which seeks to annul the commission's denial of the landlord's protest against amendment No. 50, Part II, of the State Rent and Eviction Regulations.

BOTEIN, RABIN and FRANK, JJ., concur in *Per Curiam* opinion; BREITEL, J. P., dissents and votes to reverse in opinion, in which VALENTE, J., concurs.

Order affirmed, with $20 costs and disbursements to petitioner-respondent.