OPINION OF THE COURT
Alfred M. Ascione, J.
This is an article 78 proceeding instituted by an owner challenging several orders of the New York Conciliation and Appeals Board adjusting the initial legal regulated rents (base rents) as of June 30, 1974 for various apartments. Such apartments have come back under the jurisdiction of the rent stabilization law by virtue of chapter 576 of the Laws of 1974, known as the Emergency Tenants Protection Act (ETPA).
The tenants of the apartments, in this proceeding, filed fair market rent appeals in accordance with the procedures set forth in the ETPA and the board made determinations on such appeals lowering the rents for the apartments. The board’s determination was based upon a special rent guidelines formula and a comparability study of similar apartments. Petitioner contends that such determinations did not conform to the statutory requirements of ETPA and are based on an arbitrary and capricious course of conduct by respondent.
The original rent stabilization law, enacted on May 29, 1969 (Local Laws, 1969, No. 16 of City of New York), provided for a May 31, 1968 base date for the rents of the previously unregulated post-World War II housing. The date selected was almost a full year prior to enactment of the statute and required a rollback of rent to the May 31, 1968 level. In 1971, the State superseded local regulation of rents by enacting a law declaring that all vacancies, occurring on or after July 1, 1971, of rent stabilized apartments and rent controlled apartments, would be deregulated upon such vacancy.
The ETPA, enacted in May, 1974 by the State Legislature, modified the prior vacancy decontrol law by restabilizing those apartments which were originally under rent stabilization but had been deregulated between 1971 and 1974. Further, the legislation provided that once an apartment was restabilized, future vacancies would not result in deregulation.
The apartments in the present case were originally stabilized but were deregulated between 1971 and 1974, and then stabilized again under ETPA. In regard to such apartments, ETPA provided a new base rent date of June 30, 1974 *521 and the statute designated the rent charged on that date as the initial legal regulated rent. The law also stated that tenants who moved into apartments between January 1, 1974 and June 30, 1974 could challenge their initial legal regulated rent to the Conciliation and Appeals Board and have it adjusted down to a fair market rent. ETPA directed that the board resolve such tenant appeals by applying two criteria: (a) a special guidelines formula to be worked out by the New York City Rent Guidelines Board; and (b) rents generally prevailing in the same area for substantially similar housing accommodations.
The board’s first attempt to comply with such criteria in determining fair market rents was rejected by the courts. In Matter of Bradcord Assoc. v Conciliation & Appeals Bd. of City of N. Y. (52 AD2d 569, affg NYLJ, Aug 14, 1975, p 6, col 2) the board was directed to do a case by case, apartment by apartment, comparability study for each apartment whose initial legal regulated rent had been appealed. The court found that the second criteria of the statute (rent generally prevailing) was not met by the board using city-wide statistics of apartment rents contained in surveys made by official bodies. The respondent had claimed that such statistics coincided with the special guidelines issued by the rent guidelines board. However, the Bradcord decision rejected that claim and found that the respondent must conduct a separate comparability study for each apartment, regardless of the resulting administrative burden.
In attempting to carry out the directives of the court the board made certain policy decisions about the comparability studies. First, it determined that it would average the rents resulting from application of the two criteria (special guidelines and comparability) in arriving at fair market rents. Second, in making such comparability studies, the board decided that it would reject consideration of rents for any controlled apartments and chose only to consider free market rents for apartments in the same line as the appealed apartment or other comparable apartments. Finally, the board also determined that only rents between July 1, 1971 and December 31, 1973 should be considered. The board would not consider deregulated vacancy or renewal rents charged between January 1, 1974 and June 30, 1974. The board decided against using such rents in the six-month period before ET-PA’s effective date on the theory that such a period was not a *522 real free-market period because the Governor had announced the repeal of vacancy decontrol early in January, 1974. Accordingly, it was felt that during this period, there was a great amount of rent gouging in anticipation of the passage of such legislation. It is this determination, to exclude what were apparently free market rents from January 1, 1974 to June 30, 1974 from the comparability studies, that forms the crux of petitioner’s objections to the fair market rents fixed by respondent. It is petitioner’s contention that such determination was arbitrary, contrary to statute, and resulted in inadequate sampling of the rents in comparable apartments and ultimately in lower fair market rents for the apartments in question.
Upon careful examination of the ETPA legislation, the court finds that the board’s determinations should be vacated because they are based upon a rollback date of December 31, 1973 that runs counter to the statutorily established local effective date of July 1, 1974. The comparability policy of the board, excluding rents from January 1, 1974 to June 30, 1974, has in effect rewritten the statute as if rents had been frozen as of December 31, 1973. The respondent had no power to substitute comparability as of December 31, 1973 for the legislatively established comparability date (Matter of Florell Equities v Weaver, 2 AD2d 542, affd 2 NY2d 982). The Legislature had rejected a prior bill that provided for a possible rollback of all rents between July 1, 1971 and June 30, 1974 and for making such rents subject to appeal. Moreover, in the initial rent stabilization law of May 1969, where the Legislature intended such a rollback, it was specifically provided in the legislation by adoption of a May 31, 1968 rollback date. The board cannot now rewrite the ETPA legislation by providing for such a rollback in its comparability studies.
The statute speaks of "rents generally prevailing in the same area for substantially similar housing accommodations.” (ETPA, § 9, subd a; emphasis added.) Such legislation is in the present tense and does not include language providing for a rollback in comparing rents to December 31, 1973. Absent such language, the board’s actions constitute an impermissible extension of specific statutory language and must be invalidated (Connally v O'Malley, 17 AD2d 411; Matter of Federal Tel. & Radio Corp. [Corsi], 301 NY 95; 1 NY Jur, Administrative Law, § 104). The presumption that all 1974 rentals must *523 be disregarded in comparability studies because made in anticipation of the reimposition of controls is an abandonment of specifically delegated discretion established by the Legislature (Matter of 340 East 57th St. Corp. v Temporary State Housing Rent Comm., 3 Misc 2d 356, affd 2 AD2d 678, affd 2 NY2d 799). By such conduct, the board is arbitrarily creating an unrebuttable presumption that is at odds with the legislative direction to consider prevailing comparable rents.
There is no rational basis for the board’s decision not to include in its studies any 1974 renewal leases and rentals accepted by new tenants and not appealed. Such rentals have either been accepted by statute as immune from appeal or by the actions of the tenants in question as being fair and reasonable. The result of such conduct by the board is an arbitrarily narrowed comparability sample. The comparability criteria in the legislation was obviously aimed at providing a second variable to help achieve a fair and just rent and was not included merely as a vehicle to lower the rent arrived at by using the guidelines board standards. The extraordinary increase in post-1973 operating costs is reflected in the guidelines, while the comparability standard established by the board gives no room for such consideration by virtue of the December 31, 1973 cutoff date for comparing rents.
While the court finds respondent’s comparability formula to be arbitrary and contrary to statute, it does not find respondent’s procedure in averaging the rents arrived at by use of the two statutory criteria to be unreasonable in fixing a fair market rent. The board is required by statute to give consideration to both the special guidelines and comparability criteria with no, mandate to give either one greater weight than the other. In such circumstances, the respondent may average rents arrived at by use of the two criteria, regardless of whether the landlord or tenant may benefit in a particular case. Moreover, the court finds no fault in the board’s conduct in allowing petitioner to submit the apartments used by the board to determine comparable rents. The petitioner had sufficient opportunity to submit comparable free market rentals in the building or complex. Further, the court finds no need for any additional adjustments in respondent’s procedures in regard to leases of more than one year. The board’s conduct was only deficient in excluding all 1974 rents from the comparability studies.
Accordingly, the application to annul the determinations of *524 respondent in regard to the apartments in question is granted and the matter is remanded to the respondent for further consideration consistent with this decision.