In the Matter of IRA LEEMAN, Petitioner, against JOHN F. O'CONNELL et al., Constituting the NEW YORK STATE LIQUOR AUTHORITY, et al., Respondents.

Third Department, March 11, 1953.

*Samuel Resnicoff* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General,* and *Herman N. Harcourt* of counsel), for respondents.

BERGAN, J. Petitioner was appointed in 1951 as an investigator for the State Liquor Authority. The appointment was made in the competitive class of the civil service from an eligible list for which petitioner had qualified by examination.

On April 22, 1952, he was dismissed from his position by the Liquor Authority on written charges. (Civil Service Law, § 22, subd. 1.) This proceeding is to review that determination.

Some of the accusations against petitioner were dismissed and those that were sustained are summarized by saying they arose out of statements attributed to petitioner while he was officially investigating an application for a new restaurant wine license.

It was charged that while thus officially investigating the application of Mary S. Cantalupo petitioner told the applicant that he " could make it or break it ", referring to her application; that he was there " to approve or disapprove " the license; that a prior licensee in the premises had no trouble with liquor authorities over her books and her license had been facilitated because " she paid graft "; that it was " up to " the petitioner whether the applicant received her license. He also was accused of not paying for the meal he ordered in the premises.

These acts, so the charge stated, were such as " to reflect discredit " on the Authority and to " impair the administration of " the law and were " prejudicial to the good order, efficiency and discipline " of the Authority.

Petitioner urges upon us a somewhat broader conception of our powers of factual review than we have been accustomed to entertain, and, indeed, broader than we have understood them. The statute imposes the burden of proof upon the person alleging the incompetency or misconduct, and petitioner argues, to quote his brief, that it " is basic, fundamental and axiomatic " that in a veteran's civil service dismissal case like this, the court is required " to review the weight and sufficiency of the evidence ".

It is easy to demonstrate on consistent authority that we have no such power. (*Matter of Burke* v. *Bromberger,* 300 N. Y. 248; *Matter of Humphrey* v. *State Ins. Fund,* 298 N. Y. 327; *Matter of Miller* v. *Kling,* 291 N. Y. 65.)

What we are called upon to do is to examine the record to determine whether the decision to dismiss petitioner from the service is supported by substantial evidence (*Matter of Humphrey* v. *State Ins. Fund, supra*). In determining the substantiality of the evidence we must, however, examine the record as a whole (*Matter of McCormack* v. *National City Bank,* 303 N. Y. 5, 9; *Universal Camera Corp.* v. *Labor Bd.,* 340 U. S. 474).

What we see when we examine the record before us as a whole, including the petitioner's own testimony given in his defense at the hearing, is a classic issue of fact. If the Authority believed the witnesses against petitioner it could fairly have found that the facts alleged in the charges had been sustained. Some parts of petitioner's own explanations could be regarded

as giving collateral support to the testimony of these witnesses.

The applicant for the license, Mrs. Cantalupo, testified that while petitioner was in her premises making an inspection as an officer of the Authority he stated that he could " make or break " her application. She further testified that when she asked him why the prior licensee had no trouble with her books petitioner said to her: " You know why. She paid." The witness added " Paid money ". When she said the previous licensee got her license in two weeks without red tape or anything she testified petitioner said " You know why? She paid."

Applicant further testified she told petitioner " when I get my license, call me up and I will see what I can do for you " and petitioner said " I can't call you up because it is too risky * * * I will come around to see you."

While this statement was embraced in a separate charge which the board did not sustain, the petitioner's explanation of it which in part corroborates the complaining witness is material upon his credibility and is a proper part of our review when we consider the record as a whole.

In reference to an inspector from the local board who had visited applicant's premises, applicant testified that petitioner said: " Don't get mad, Mrs. Cantalupo, if I ask you this question. Did you pay? " Applicant testified she replied that she did not have that kind of money. All of this is not in detailed support of the exact charges, but some of it is and the charges that have been found to be sustained are each supported by substantial proof.

Some of petitioner's explanations following his categorical denials of specific charges cast light on his own reactions to the charges, his evaluations of the charges, and his views of his own official responsibilities.

His attorney asked him specifically whether he told Mrs. Cantalupo in reference to the prior licensee's lack of trouble with her books that she had paid graft. His answer was " Never ". He then made an interesting observation. " In fact ", he added, " I had no knowledge of her books." He continued as the subject was pursued: " I had no knowledge of their whereabouts, and I didn't particularly care. It wasn't my function ".

When his attorney asked him whether he had said that the earlier licensee had received her license in two weeks " because she had paid graft " he followed a categorical denial immediately by volunteering to say that the only use of the words " two weeks " was when he first came in and was told that a license

was expected in two weeks. He further testified that when Mrs. Cantalupo said '' she would take care of me or words to that effect, I thought it was just a harmless statement. I said * * * ' that I live on my salary, Mrs. Cantalupo, can't do anything outside of that,' and I left the place.''

Thus in searching the record as a whole we are not led to think either that there was no substantial evidence presented to the Authority in support of the specific charges or that reasonable men, hearing that evidence would, as a matter of law, be required to say they were not fairly sustained. Our power of review of the facts stops when we get to that point.

Petitioner does not raise directly the issue that even assuming the facts charged were true, there was no such misconduct as to warrant dismissal; because he makes the main point the charges are not factually established. He reaches this question obliquely through a quotation from *Matter of Ryan* v. *New York State Liquor Authority* (273 App. Div. 576) that '' a single error of judgment '' or a '' mere technical breach of the rules '' would not be sufficient to warrant a removal (p. 581).

This, indeed, seems to us the only arguable question presented on the record, whether the facts if true, constitute a clear enough showing of misconduct to warrant dismissal. There was no proof of a literal point-blank offer to take a bribe. Some of the things that the witnesses testified were said by petitioner could justly be regarded as motivated by good purpose in the execution of his duties. Some of what he said might make conversation at a street corner, or in a bus or at the corner grocery store. In some of its isolated details it would be a common ingredient of idle gossip.

But it carries with it a curious cumulative effect. It somehow jars the ear to hear that a State officer dealing officially with a citizen talks about the plenary power he has over the citizen's application before his agency in one breath, and in the next discusses his conviction and feeling that another person, a licensee, in dealing with the State has been facilitated in such dealings by paying a bribe to a public officer.

We think petitioner's rights have not been outraged in any legal sense if the Liquor Authority felt, as it did, that such a course of conversation '' reflected discredit '' on the Authority, impaired the administration of the law and was prejudicial to the good order, efficiency and discipline of the Authority.

The argument that the case was prejudged is without support. Petitioner also argues that the hearing officer was not designated in writing by the Authority under subdivision 1 of section

22 of the Civil Service Law. This question was not raised at the hearing, and the Authority attaches to its brief a certified copy of minutes showing the designation of the hearing officer. Since this proceeding is one directly before this court and the question is raised here for the first time, the Authority has the right to offer additional jurisidictional proof in support of the determination reviewed.

The determination should be confirmed, without costs.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Determination confirmed, without costs. [See *post*, p. 1049.]