In the Matter of John Haywood, Petitioner, against Craig Colony et al., Respondents.

Fourth Department, December 17, 1958.

*Skivington & Skivington (George J. Skivington* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (William C. Robbins* and *Paxton Blair* of counsel), for respondents.

GOLDMAN, J.   Petitioner employed as an attendant at Craig Colony, a corporation established under the Mental Hygiene Law of the State of New York, seeks to review a determination of the director of Craig Colony which, after a hearing, dismissed petitioner from employment.   This is the second appeal before this court in this matter, the first one having resulted in an annulment of the determination and remitted the matter to the respondent corporation and its director for further proceedings not inconsistent with the memorandum which pointed out the defects of the original charges.   Thereafter a new charge of misconduct was served containing one specification which read as follows: '' Through your unlawful act, Reuben Armond received phenobarbital tablets from you, during the month of February 1957, at a time when Reuben Armond was working in the B & B Grill in Mount Morris, New York.''

Petitioner categorically denied the charge in his answer and a brief second hearing was held which resulted in a finding of guilty and imposed the penalty of discharge.

Petitioner had been employed by the respondent, Craig Colony, for a period of approximately 20 years prior to the filing of the charge against him.   The only witness whose testimony related to the charge of misconduct was one Armond who had twice been a patient at the Rochester State Hospital and who, when being qualified as to his competency as a witness in a preliminary examination by two physicians, gave as his understanding of the truth the following answer: '' Well it pays to tell the truth when you know you are going to be caught.''

The whole history of the principal witness' past was a sad and deplorable one which included in addition to his mental instability, a bad record of habitual alcohol and drug imbibition.   He was living at the County Home at the date of the *hearing.*   At the time when the alleged misconduct occurred he was employed as a kitchen handy man in a bar and grill for which he received no compensation other than the drinking

of all the intoxicating liquors "that I could get there, I drank wherever I happened to be" and his board and a room over the restaurant. On direct examination he testified that he had asked the petitioner "about getting me some of that stuff". Two days later when Armond was washing dishes petitioner, employed in his off hours by the bar and grill, came into the kitchen and some 10 or 15 minutes after he had left Armond said that when he was cleaning off the table he found "an envelope with some pills". He was then asked:

"Q. What sort of pills were these, sir? A. Well I can't analyze them myself but I take them to be pheno, grain and a half.

"Q. Phenobarbital? A. Phenobarbital.

"Q. Mr. Armond, did you see Mr. Haywood place the pills or the package you are talking about? A. I didn't see him place them down but I cleaned the table off and when I started to come out."

There was no testimony as to any conversation between the two men relating to the pills although they were the only persons in the kitchen at that time. Under these circumstances it does not seem reasonable that the petitioner would have left the pills in this strange manner without some discussion with Armond. The witness did not open the envelope until that evening and said he found approximately 150 pills. He admitted taking some of them "before I went to the hospital and left quite a few of them in my room and I guess my employer got them." On cross-examination in answer to the question, "You didn't know what they were?" he said, "Not exactly, no.", and later testified: "Well, I took them to be phenobarbital". He was then asked this important question: "To go back to my question, you don't know of your own knowledge what these pills were, do you?" to which he answered, "No, I can't say". The witness admitted that he had been drinking heavily during this period.

The record is barren of any evidence of misconduct by petitioner during his 20 years of employment and it further appears that this was the only time the witness claimed he received pills from petitioner. Although this was the second hearing, no witnesses were offered to identify the pills which the petitioner allegedly gave Armond and no evidence was presented that there were any phenobarbital pills missing from Craig Colony at the time of the alleged offense. Although the specification charged the commission of an unlawful act it was conceded on argument that while the alleged offense occurred in

February, 1957, and a criminal charge was placed against petitioner, there had not yet been any prosecution of that charge.

We believe that there is a complete absence of proof that petitioner gave phenobarbital tablets to Armond who, upon cross-examination, definitely admitted that he did not know what the pills were. The quality of the proof necessary to sustain the dismissal of petitioner is set forth in *Matter of Humphrey* v. *State Ins. Fund* (298 N. Y. 327, 331–332) where the court said: "It is, of course, of no moment that not all of the evidence pointed to petitioner's guilt or conclusively established it. In a proceeding such as this, brought under article 78 of the Civil Practice Act, the record may be examined only to ascertain whether there is 'substantial evidence' to justify the administrative determination." The same principle was followed in *Matter of Leeman* v. *O'Connell* (281 App. Div. 299, 300) where the court said: "What we are called upon to do is to examine the record to determine whether the decision to dismiss petitioner from the service is supported by substantial evidence".

Absent credible proof that the petitioner gave Armond phenobarbital tablets there is not only no substantial evidence but no evidence whatsoever to justify the finding of guilt. Certainly petitioner's dismissal is not supported by "evidence so substantial that from it an inference of the existence of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' (*Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, 229.) " (*Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256, 273–274.)

We recognize our limitations in annulling the finding of an administrative body after a hearing has been held and a determination made upon facts, even though such evidence would not meet the test of sufficiency in a court of law. We cannot, however, permit the petitioner to suffer the penalty of discharge after 20 years of service upon the testimony of a witness like Armond from which, even after drawing the broadest of inferences, we can find no proof to sustain the charge. Petitioner should be restored to his former position and under section 23 of the Civil Service Law, petitioner is entitled to receive his compensation from the date of removal, less the amount of compensation received from any other employment or occupation to the date of his restoration to his position with

Craig Colony and appropriate proceedings should be had to determine the amount thereof.

BASTOW and HALPERN, JJ. (dissenting). In our opinion, there was substantial evidence to support the determination under review. The annulment thereof is therefore beyond the power of the court (*Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327). The principal question raised in the majority opinion concerns the credibility and reliability of the testimony of the witness Armond. We find ample support in the record for the decision of the trier of the facts accepting Armond's testimony as reliable. The psychiatrist, who had examined Armond to determine his competence, stated that, in his opinion, Armond was "competent to testify; he was in good contact, his sensorium was clear, his memory showed no impairment, he spoke coherently and rationally; he was able to distinguish between right and wrong."

In any event, it was solely within the province of the director of the Colony, who conducted the administrative hearing, to determine the credibility of the witness. We have no power to interfere with the determination by an administrative officer of the credibility of witnesses in a proceeding brought before him. Even " [W]here the evidence is conflicting, it is for the administrative board to pass upon the credibility of witnesses ". (*Matter of Avon Bar & Grill* v. *O'Connell*, 301 N. Y. 150, 153; 1 N. Y. Jur., Administrative Law, § 199, pp. 652–653.) This is true, a fortiori, where the testimony of the witness is uncontradicted, as it is here. Even in a strictly judicial proceeding, the courts have no power to reject the uncontradicted testimony of a disinterested witness which is not inherently incredible or improbable (*Hull* v. *Littauer*, 162 N. Y. 569, 572).

Neither do we have the power to reject the inferences which the administrative officer chose to draw from the evidence. " [W]here from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the Board. The courts may not weigh the evidence or reject the choice made by the Board where the evidence is conflicting and reason for choice exists " (*Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256, 267; see, also, *Matter of Radigan* v. *O'Connell*, 304 N. Y. 396).

Taking the testimony of Armond at its face value, and giving the respondent the benefit of all reasonable inferences therefrom, as we are required to do under these rules, there was ample evidence to support the finding of the petitioner's guilt. The respondent had the right to infer that Armond, by virtue of his prior use of phenobarbital pills, had acquired sufficient

familiarity with them to be able to identify them and, accordingly, the respondent had the right to find that the pills supplied to Armond by the petitioner were phenobarbital pills.

Armond testified that the petitioner had come into the kitchen where he was working and borrowed two dollars from him and that he asked the petitioner " about getting me some of that stuff " and " approximately two days latter " the petitioner came in and left the envelope of pills for him on the table. Armond further testified that he had taken phenobarbital pills before; in fact, he had been taking about four a day all through the winter. He testified that he was familiar with the effect of phenobarbital pills and the pills he received from the petitioner on the occasion in question acted " the same ". When asked whether he had been drinking that day, he said " not that [day] ".

It is noteworthy that the petitioner did not at any time during the course of the administrative proceeding deny the charge against him under oath. His answer was not sworn to and he did not take the stand in his own defense. In view of the evidence that he had given pills of some kind to the witness Armond, the petitioner was called upon to come forward with an explanation, if he claimed that the pills were not of the character attributed to them by Armond. Having declined to offer any explanation, the petitioner took the risk that the trier of the facts would draw the strongest inferences against him " which the opposing evidence in the record " permitted (*Noce* v. *Kaufman*, 2 N Y 2d 347, 353). The trier of the facts had the right to infer that the statements made by Armond adverse to the petitioner could not truthfully be contradicted by him (*Laffin* v. *Ryan*, 4 A D 2d 21).

It may well be that the petitioner failed to take the stand because he feared that he might incriminate himself. But, since this is a civil proceeding, the trier of the facts was entitled to draw an unfavorable inference from the petitioner's conduct. The petitioner had the right to assert the privilege against self incrimination or to refrain from taking the stand because of the fear of self-incrimination but, if he did so, he had to run the risk, for the purpose of this civil proceeding, that an inference would be drawn that he could not truthfully contradict the testimony against him (*Bradley* v. *O'Hare*, 2 A D 2d 436; 8 Wigmore, Evidence [3d ed.], § 2272, 1957 supp., pp. 181–182; cf. *Bilokumsky* v. *Tod*, 263 U. S. 149, 153–154). Unlike a defendant in a criminal case, if the defendant in a civil proceeding refrains from taking the stand, his silence may be used against him as " evidence of the most persuasive character " (*Bilokumsky* v. *Tod, supra*, p. 154).

It is suggested in the majority opinion that the discharge of the petitioner is too severe a measure of discipline for the offense here involved in view of the petitioner's many years of service and the absence of proof of prior misconduct (Civ. Prac. Act, § 1296, subd. 5-a). We find no abuse of discretion in the imposition of discharge as the measure of discipline. It was amply justified by the inherent nature of the offense (*Matter of Stolz* v. *Board of Regents,* 4 A D 2d 361). We give no weight to the absence of proof of prior misconduct in the record since such proof would have been inadmissible upon the hearing, which was directed to the determination of the petitioner's guilt or innocence of the offense charged. Once the petitioner was found guilty, it was plainly the duty of the respondent to remove him from his position. An attendant at an institution for epileptics found guilty of selling or giving away habit-forming drugs to an addict certainly ought not to be allowed to continue in that position.

The determination should be confirmed.

All concur, except BASTOW and HALPERN, JJ., who dissent and vote for confirmation in a memorandum. Present — McCURN, P. J., KIMBALL, BASTOW, GOLDMAN and HALPERN, JJ.

Determination annulled, with $50 costs and disbursements and petitioner reinstated.