In the Matter of ERIC J. PHINN, Petitioner, against ANNA M. KROSS, as Commissioner of Department of Correction of the City of New York, Respondent.

First Department, May 28, 1959.

*Morris Weissberg* for petitioner.

*Robert L. Ellis* of counsel (*Seymour B. Quel* with him on the brief; *Charles H. Tenney, Corporation Counsel,* attorney), for respondent.

VALENTE, J. This is a proceeding under article 78 of the Civil Practice Act to review the determination of the Commissioner of Correction, dismissing petitioner from his position as Correction Officer in the New York City Department of Correction. In January, 1958, written charges — three in number — of violations of the Rules and Regulations of the Department of Correction were served on petitioner, accusing him (1) with having accepted and removed from Rikers Island without official authorization, a letter, written by one Richard Espanol, an inmate of the penitentiary there, addressed to the inmate's wife; (2) with being absent without official leave on December 28, 1957 when he failed to report for duty; and (3) with having failed to submit the prescribed written report in connection with his lateness in reporting for duty on December 28, 1957.

Hearings were had on these charges before a Deputy Correction Commissioner who found petitioner guilty and recommended his dismissal. After a review of the entire case, this finding and recommendation was adopted by the Commissioner of Correction.

As to the two charges dealing with absence without leave and failure to submit a written report, there is actually no factual issue. In effect, petitioner admitted the essential facts supporting these specifications and offered an explanation in extenuation. We, therefore, agree with the conclusion of the commissioner as to charges 2 and 3.

However, as to the most serious charge — the removal of an inmate's letter from Rikers Island — we find that there was no substantial evidence on the whole record to support the determination as to petitioner's guilt.

In an article 78 proceeding, where the determination under review was made as a result of a hearing held pursuant to statutory direction, it is provided in section 1296 of the Civil Practice Act that the following questions shall be determined:

" 6. Whether there was any *competent proof* of all the facts necessary to be proved in order to authorize the making of the determination.

" 7. If there was such proof, whether, upon all the evidence, there was such a preponderance of proof against the existence

of any of those facts that the verdict of a jury, affirming the existence thereof, rendered in an action in the supreme court triable by a jury, would be set aside by the court as against the weight of evidence.''

The scope of judicial review of quasi-judicial determinations of administrative tribunals is governed by the '' substantial evidence '' rule i.e., whether on the whole record there was substantial evidence to support the administrative determination. (*Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256; *Matter of Lynch's Bldrs. Restaurant* v. *O'Connell,* 303 N. Y. 408; *Matter of Humphrey* v. *State Ins. Fund,* 298 N. Y. 327; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Reynolds* v. *Triborough Bridge & Tunnel Auth.,* 276 App. Div. 388.)

But the meaning of the words '' substantial evidence '', in applying the test to particular cases, has not received — and cannot because of the broad generality of the term — any exact definition. In *Matter of Stork Restaurant* v. *Boland* (282 N. Y. 256, 273, *supra*), it was said: '' A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably.'' In making the determination as to the rationality of the inference, it was held in *Matter of Stork Restaurant,* the court must consider the record as a whole and thus take into account all of the evidence.

The rule thus announced is similar to the later enacted provisions of subdivision (e) of section 10 of the Federal Administrative Procedure Act (U. S. Code, tit. 5, § 1009). (See Benjamin-Judicial Review of Administrative Adjudication: Some Recent Decisions of the New York Court of Appeals, 48 Col. L. Rev. 1).

In a leading decision interpreting the Federal rule, *Universal Camera Corp.* v. *Labor Bd.* (340 U. S. 474), Justice FRANKFURTER discussed the necessity for using the record as a '' whole '' in a judicial review of an administrative proceeding. It was there said (p. 488): '' The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. * * * Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.''

In *Matter of Kilgus* v. *Board of Estimate of City of N. Y.* (308 N. Y. 620), the court, per CONWAY, Chief Judge, indicated some of the confining limits of the substantial evidence rule, thusly (p. 627): '' The scope of review by the courts of deter-

minations of administrative bodies is not the same as the review, for example, by the Appellate Division of the judgments of lower courts in jury cases, where the Appellate Division may review the facts as well as the law, and set aside the determination and order a new trial if that court finds it to be against the weight of the evidence or, in a nonjury case, where the Appellate Division has the same power to review the record and decide the questions of fact as the trial court (see Civ. Prac. Act, § 608; Cohen and Karger, Powers of the New York Court of Appeals, § 110, p. 468 *et seq.*).''

So, too, in *Matter of Burke* v. *Bromberger* (300 N. Y. 248), Judge DESMOND speaking for the majority of the court said (p. 250): '' There were contradictions and confusion, as to details, in that testimony, but it was not impossible or incredible, and in refusing to give any effect to it, the Appellate Division was substituting its views, on a question of fact, for that of the Chief Magistrate who heard the witnesses. Nothing is better settled than that the court had no such power in such an article 78 proceeding (*Matter of Miller* v. *Kling*, 291 N. Y. 65; *Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327; *People ex rel. Guiney* v. *Valentine*, 274 N. Y. 331).''

In *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (304 N. Y. 65), Judge FULD summarized the court's views in the following language (p. 71):

'' Under the test prescribed by our decisions for the judicial review of quasi-judicial determinations, the evidence supporting the findings of an administrative tribunal must be ' viewed in the light of the record as a whole ' (*Matter of McCormack* v. *National City Bank, supra*, 303 N. Y. 5, 9), since ' Evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony.' (*Matter of Stork Restaurant* v. *Boland, supra*, 282 N. Y. 256, 274.) That principle in mind, the quasi-judicial determination is to be sustained if the reviewing court concludes that others might reasonably reach the same result.

'' This does not mean that the reviewing court will substitute its judgment for the considered judgment of the administrative tribunal. It does mean, however, that it will apply the only available objective test to determine whether the administrative tribunal did in truth exercise such considered judgment and that it will insist upon ' '' such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'' (*Consolidated Edison Co.* v. *National Labor Relations Board*, 305 U. S. 197, 229.) ' (*Matter of Stork Restaurant* v. *Boland, supra*, 282 N. Y. 256, 274.) ''

A review of the substantiality of the evidence is not a mere perfunctory, passive function (*Matter of Reynolds* v. *Triborough Bridge & Tunnel Auth.*, 276 App. Div. 388, 393, *supra*). In *Matter of Di Nardo* v. *Monaghan* (282 App. Div. 5), where this court annulled the determination of the Police Commissioner in dismissing a police sergeant, we said (p. 7): "In the last analysis, we think substantial evidence means evidence which is entitled to carry conviction."

The latitude of the review can be gleaned from *Matter of Evans* v. *Monaghan* (306 N. Y. 312), where an accomplice's testimony was found to constitute substantial evidence even though not corroborated to the extent required by section 399 of the Code of Criminal Procedure. While holding that section 399 does not apply to departmental trials, the court nevertheless found in the whole record sufficient circumstances to command judicial confidence in the story told by the accomplice.

(For further discussion of the substantial evidence rule see: Jaffe, Judicial Review: Question of Fact, 69 Harv. L. Rev. 1020; Jaffe, Judicial Review: Substantial Evidence on the Whole Record, 64 Harv. L. Rev. 1233; Schwartz, Gray v. Powell and the Scope of Review, 54 Mich. L. Rev. 1.)

Definition of our power to review is assisted by noting its limitations. Thus, even though in our opinion a conclusion is against the weight of the evidence we may not disturb the determination if there is "substantial evidence" to support it. So, too, where there is "substantial evidence", the administrative agency, not the court, is the final arbiter of any fact issues. Finally, we do not have to be convinced of the "rightness" of the determination so long as there can be a reasoned probability of the fact found by the administrative body.

In cases involving disciplinary action against an employee of a governmental department, it is necessary to strike a balance between the obligation of an administrative official to perform the public duty vested in him and the individual employee's right to be dealt with fairly and justly. In the last analysis, the head of a department of government is charged with the responsibility of its efficient and scrupulously honest operation. It is not for the courts to perform that function; nor will the courts share in, or receive the brunt of, any public criticism arising from an administrator's failure to clean his house.

Moreover, disciplinary trials in law enforcement agencies add another difficulty to a reviewing court since, perforce in most of those cases the accusing witnesses are drawn from the ranks of criminals, informers, narcotics users and other persons of low moral character. Judicial review of findings of guilt

predicated on evidence from such questionable and tainted sources demands a careful examination of any countervailing testimony or circumstances to see if the affirmative accusation has not been despoiled of its substance.

With all of the foregoing in mind, we have examined the whole record before us to determine whether there was substantial evidence to support the first charge.

The first specification developed from an investigation by the prison's security forces, in combination with the Police Department and District Attorney's office, of information that narcotics were being smuggled into the Rikers Island Penitentiary.

According to the testimony, Espanol, an inmate of the penitentiary, was visited by Detective Dan McInery of the New York police force, and in the course of their conversation Espanol disclosed to the detective that narcotics were being brought into the prison.* That detective, in turn, conferred with Captain Kantro, Chief of Prison Security; and as a consequence a meeting was arranged among the prison authorities, The Bronx District Attorney's office and the Police Narcotics Squad. It was decided to avail themselves of the co-operation of Espanol and his wife to apprehend petitioner who was named as a suspect.

Kantro dealt with Espanol and his wife. Espanol was interviewed in secret in the prison hospital. According to Espanol petitioner was the person bringing the narcotics into the prison. The testimony is confusing and contradictory as to how Espanol made his contact with petitioner. It was claimed that another inmate " Duke " Ruvolo was responsible. However, Ruvolo took the stand and denied that petitioner ever offered to obtain drugs for him. He further testified that he had never been questioned by the correction officers concerning the petitioner and that he was placed in solitary confinement because of his failure to tell the authorities if he knew the officer who was bringing the narcotics into the prison.

Under a preconceived plan Espanol was to write to his wife stating that she would receive a telephone call, after which, the caller — who it was expected would be the petitioner — would deliver to her a note from Espanol upon receipt of which she was to give the bearer of the note $50.

In order to avoid the prison censor, Espanol was to give this letter to the petitioner to mail outside the penitentiary. Upon Mrs. Espanol receiving the letter, she was to notify Kantro

---

* Detective McInery testified that Espanol did not mention petitioner's name at that meeting, and that the first time McInery heard petitioner's name was at the departmental hearing.

who would give her $50 in marked money and wire her with a one-way radio transmitter so the police could listen in on any conversation she might have with the caller.

The record establishes that a letter was written by Espanol to his wife and that the letter was taken out of Rikers Island, mailed in Manhattan and received by her. Upon receipt of the letter, she communicated with Kantro, met him and was duly wired; and while there was testimony that a call was made to her home at the designated time, she arrived too late to receive it. The record further indicates that the caller did not identify himself. At this point, the wife became uncooperative and an attempt was made to use Espanol's sister as a decoy, but this did not materialize.

Espanol testified he gave the letter to petitioner. This petitioner emphatically denied, as well as having been approached by Espanol or anyone else regarding the bringing in of drugs or liquor into the prison. There are a number of contradictions in the testimony of Espanol and Kantro as to the time when the letter was supposedly given to petitioner. Moreover, there is no showing that the letter could not have been given to some other person for mailing outside the prison.

We have considered Espanol's direct accusation against the background of the other evidence and circumstances.

Initially, we have appraised the character of the accuser as demonstrated by his record. At the time the events here took place, Espanol was serving a sentence for forgery. Although 27 years of age, he had a prior record of convictions for carrying a concealed weapon, statutory rape, possession of narcotics and violation of parole. Furthermore, he testified he was a recipient of favors from the police — with all the implications that attach to such a relationship. Moreover, it appears that Espanol was undergoing psychiatric treatment — the exact nature of which was excluded from evidence.

Additionally, we have considered the many contradictions in details in Espanol's testimony. * Significant, too, is that when the ill-starred plan to implicate petitioner had collapsed without success, petitioner was on January 16, 1958 subjected to a surprise search of his person, clothing and locker. That search

---

* In passing, mention might also be made of the negative implications of evidence which was not offered; for example, Kantro's failure to make a fingerprint check of the letter Espanol claimed he delivered to petitioner. Since Espanol asserted that petitioner read the letter, petitioner's fingerprints would undoubtedly have been on the paper. But Kantro testified he carried the letter in his pocket for a few months, until a fingerprint examination would have been impossible.

uncovered no evidence of the possession or use of narcotics, nor was any evidence of the possession or use of narcotics, or any evidence linking petitioner with Espanol found.

In sum, while there are indications in the record that the rules of the penitentiary were being violated, there is not a single circumstance that supports the probability that the petitioner was the responsible party (*Matter of Di Nardo* v. *Monaghan*, 282 App. Div. 388, *supra*; *Matter of Evans* v. *Monaghan*, 306 N. Y. 312, *supra*). There is no proof that any drugs which may have been brought into the penitentiary were confined to the area patrolled by the petitioner, nor is there anything to indicate that the petitioner should have had knowledge of the presence of drugs in the cell block under his supervision. We have only the accusation of the informer Espanol, who, we can assume was hoping for some reward. But his accusation is one that might have been leveled at any guard or prison official with whom he had any contact. Opposed to Espanol's testimony are all the countervailing circumstances which detract from the weight of Espanol's statement that the petitioner was the person to whom he gave the letter.

Under all of the circumstances disclosed, we are unanimous in the conclusion that there was no substantial evidence on the whole record to establish the charge contained in the first specification. The determination of the Commissioner dismissing petitioner should therefore be annulled.

Unquestionably the determination dismissing petitioner from the department was actuated in a great measure by the adverse finding as to the first charge. Since we find that the other two charges were sustained, we should remit the matter to the Commissioner of Correction to reconsider the punishment in the light of our decision herein.

BREITEL, J. P., RABIN, McNALLY and STEVENS, JJ., concur.

Determination annulled and the matter remanded to the Commissioner of Correction to reconsider the punishment in the light of the opinion of this court.