■ BOBBIE H. HOLMES, Petitioner, v JOHN D. SIMPSON, Individually and as President of the New York City Transit Authority, Respondent. — Proceeding pursuant to CPLR article 78 to review a determination of the New York City Transit Authority, dated October 1, 1981, which, after a hearing, found petitioner guilty of certain misconduct and dismissed him from his position as a collecting agent. Petition granted, on the law, without costs or disbursements, determination annulled and the petitioner is restored to duty with full back pay less any compensation which he may have earned in any other employment and any unemployment insurance benefits he may have received. Petitioner has been employed for 21 years by the Transit Authority. The record indicates that the incident complained of occurred during a tour of duty that started at 9:50 P.M. on February 15, 1980, and ended at 5:50 A.M. on February 16, 1980. Petitioner was one of four employees working on a revenue train. Their job was to stop at each station and pick up the revenue accumulated at the subway token booths during the day. Two of the men, a key man and a sheet man, leave the train and go to the token booth. The key man opens the safe in the booth and removes the bags of money. He calls out the number of bags to the sheet man who has picked up the sheet at the booth. The sheet man checks the number of bags listed on the sheet with the number called out by

the key man. These two men then board the train and place the bags on a metal container referred to as a "can". A third man, the assistant tally clerk, then counts the number of bags and calls that number out. The fourth member of the group, the tally clerk, now has the sheet and he checks the number called out by the assistant tally clerk, to be sure the numbers match. The bags of money are then placed inside the can which is locked. The cans are removed at the end of the run at Transit Authority headquarters at Jay Street, in Brooklyn. On the night in question the petitioner was the assistant tally clerk. When the train reached the Canal Street station, the procedure described above was followed. Nothing unusual occurred at that time and it was not until the train reached Jay Street that the group discovered that they were short one bag. All four employees testified at the disciplinary hearing that no one noticed anything unusual until the train reached Jay Street. Just how it was discovered that a bag was missing was never clearly explained. The tally clerk testified that "[b]y us counting the can, transferring the can into another can, we discovered that a bag was short". The same employee testified that the can was sealed as the train proceeded toward Jay Street. By the same token, it was never explained how the parties determined that one particular bag was missing and that it came from the Canal Street station. Petitioner's coemployees testified very forthrightly that they had no independent recollection of the events of that night other than the testimony of the tally clerk that, from the time the train left the Canal Street station until the shortage was discovered, the petitioner never left the train. Yet the bag was never found. The only piece of real evidence against petitioner is the tally sheet. The sheet indicated that five bags were taken from the station whereas petitioner claims it was four. The other three employees clearly and openly relied on the tally sheet in testifying, yet it is far from being a reliable piece of evidence. The missing bag is the first one listed on the sheet, which indicates that it was deposited in the booth's safe at 11:00 P.M. on February 14, 1980. Supposedly it was picked up by petitioner's crew at 11:38 P.M. on February 15, 1980, more than 24 hours later. The tally sheet for the previous night was not produced nor was any explanation given as to why that bag was not picked up on the previous night. The entry for the missing bag also shows that it contained $263 and 150 tokens, yet counsel for the Transit Authority inexplicably amended the charge against petitioner to claim that the missing bag contained $338 in currency and no tokens. Finally we note that the sheet man testified that he routinely signed the tally sheet before getting the count. All things considered, the sheet is a mighty thin reed upon which to base a decision to destroy a man's career. Without the tally sheet, there is nothing. The law is well settled that in order for a hearing officer to make a finding of guilt, there must be substantial evidence to sustain the charge, or charges, and, for a reviewing court to confirm the findings, it must, of course, also determine that they were based on substantial evidence. On this issue, the Court of Appeals, in the case of *300 Gramatan Ave. Assoc. v State Div. of Human Rights* (45 NY2d 176, 181-182), had this to say: "A court reviewing the substantiality of the evidence upon which an administrative agency has acted exercised a genuine judicial function and does not confirm a determination simply because it was made by such an agency (*Matter of McCormack v National City Bank,* 303 NY 5, 8-9). In final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically (cf. *Matter of Di Nardo v Monaghan,* 282 App Div 5, 7, *supra; Matter of Thomas v Codd,* 51 AD2d 418, 420; *Matter of Phinn v Kross,* 8 AD2d 132, 137; 24 Carmody-Wait 2d, Proceeding Against Body or Officer, § 145:350). Put a bit differently, 'the

reviewing court should review the whole record to determine whether there is a rational basis in it for the findings of fact supporting the agency's decision' (McCormick Evidence [2d ed], § 352, p 847; see *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; Siegel, New York Practice [1978], § 560, p 783)." Based on the entire record in the instant case, there is a lack of substantial evidence to sustain the determination. In view of the foregoing, we do not reach the question of the severity of the penalty imposed. We would note, however, that it appears to have been based on the final warning in petitioner's record rather than the evidence and we further note that the tally clerk, who himself testified that he would be equally responsible with petitioner, was suspended for one day. Gulotta, Weinstein and Rubin, JJ., concur.

Lazer, J. P., dissents and votes to confirm the determination and dismiss the proceeding on the merits, with the following memorandum: In this article 78 proceeding, petitioner seeks to review a determination of John Simpson, President of the New York City Transit Authority, which dismissed him from his position as a tally clerk with the Transit Authority. Petitioner was found guilty of misconduct and/or incompetence due to the loss of a revenue bag during his tour of duty which commenced at 9:50 P.M. on February 15, 1980, and ended at 5:50 A.M. on February 16, 1980. Although his tally sheet listed five bags received from the Canal Street token booth, at the end of the shift only four bags were counted at that collection stop. Under the standard operating procedure of the Transit Authority with respect to revenue collections, two collecting agents and two tally clerks ride a revenue train that stops at various stations where the collecting agents remove the revenue bags from the safes at the token booths, verify the number of bags listed on tally sheets previously completed by the token booth clerks, and place the bags on the revenue train. When the bags are placed on the train at each station, one of the collecting agents signs the tally sheet and the two tally clerks check the number of bags listed on the tally sheet against the actual number of bags delivered to the train. If the numbers match, the tally clerks deposit the bags in a money cart on the train and one of them signs the tally sheet. The cart is then sealed and the train proceeds to the next collection stop. At the end of the shift, the bags from each stop are again checked with the tally sheet for the particular token booth. It was at the end of the shift that petitioner and the other tally clerk discovered that only four bags were contained in the money cart for the Canal Street station, even though the tally sheet listed five bags. Each of the four employees working on the revenue train that night testified at the disciplinary hearing. The collecting agents testified that standard procedure was followed on the night in question and that the number of bags received checked with the tally sheet. Although they had no independent recollection of the number of bags removed from the safe at the Canal Street station, the collection agents declared that they would have reported a discrepancy had one existed. The other tally clerk, James Townsend, who was also disciplined for the instant incident, similarly verified the number of bags commenting that if the numbers had not corresponded, he would have stopped the train immediately and would not have signed the tally sheet. Testifying in his own defense, petitioner claimed that only four bags were received at the Canal Street station that evening. Finding that petitioner was guilty of the charge since he was unable to explain the loss of the revenue bag, the hearing referee recommended petitioner's dismissal. The impartial review board concurred with the finding of guilt, but recommended only a demotion in grade as a penalty. Respondent adopted the findings of the referee and dismissed the petitioner. This article 78 proceeding to review the determination was transferred to this court pursuant to CPLR 7804 (subd [g]). Relying on the inability of the coemployees to recollect the number of bags received at the Canal Street

station and the absence of other evidence to corroborate the tally sheet, the majority concludes that the determination under review is not supported by substantial evidence. In my view, however, it is unrealistic to expect the collecting employees to recall the exact number of bags at a particular station, especially since the revenue train stops at approximately 60 stations each night. Therefore, the standard verification procedure used during collection assumes great significance in determining the instant issue, and the testimony that a discrepancy would have been reported is probative as to the accuracy of the numbers on the tally sheets. The numbers were thus corroborated by the testimony that standard procedure was followed on the night in question. In reviewing the record, we are limited to a determination of whether the findings are supported by substantial evidence (see *Matter of Collins v Codd,* 38 NY2d 269). A reviewing court cannot substitute its judgment for that of the administrative agency, if there is " 'evidence as a reasonable mind might accept as adequate to support a conclusion' " (*Matter of Stork Rest. v Boland,* 282 NY 256, 274). If there is a conflict in the evidence, or where conflicting inferences may be drawn, it is the agency which has the sole duty to weigh the evidence and make the choice (*Matter of Collins v Codd, supra,* p 271; *Matter of Pell v Board of Educ.,* 34 NY2d 222). On this record, it is apparent to me that the tally sheet, together with the testimony concerning standard procedure, provided sufficient evidence to support the determination of guilt, and the hearing referee was free to reject petitioner's testimony to the contrary. Furthermore, since petitioner had already been given a last warning, the penalty of dismissal does not shock the conscience. Accordingly, I vote to confirm the determination.