In the Matter of ROGER K. HUMPHREY, Respondent, against
STATE INSURANCE FUND, Appellant, et al., Respondents.

Argued November 18, 1948; decided January 13, 1949.

*Bernard Katzen, General Attorney (William H. Stieglitz* of counsel), for State Insurance Fund, appellant. I. The Appellate Division was in error both on the law and on the facts. (*Matter of Greenfield* v. *Moses,* 169 Misc. 389, 257 App. Div. 809; *Matter of Jones* v. *Wilcox,* 80 App. Div. 167; *Matter of Schadler* v. *Graves,* 258 App. Div. 451, 282 N. Y. 716; *People ex rel. Moriarty* v. *Creelman,* 206 N. Y. 570; *Bridgman* v. *Cosse,* 157 Misc. 8, 246 App. Div. 632, 271 N. Y. 535; *Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256.) II. The very nature of respondent's job required that he keep himself acquainted with the procedures adopted by the Workmen's Compensation Board and he may not justify his failure to acquaint himself with one such procedure for over two years because he was not personally handed a copy of the procedure by his superior officers. III. At most only a preponderance of evidence is required even in the case of removal of a veteran and that has been met in the case at bar. (*Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Laurence* v.

*Gaffney,* 272 App. Div. 609.) IV. There is direct evidence, including respondent's own admissions, that the memorandum was delivered to him and that he had knowledge of its contents, to overcome respondent's denial.

*Thomas J. McKenna* for respondent. I. The records and exhibits failed to disclose sufficient evidence that would appeal to a person of reasonable mind to sustain the charges, nor was there substantial evidence or that quantum of proof which would satisfy any fair-minded person of the employee's guilt. (*People ex rel. Western Union Tel. Co.* v. *Public Service Comm.,* 192 App. Div. 748, 230 N. Y. 95; *Salmon* v. *Rochester & Lake Ontario Water Co.,* 120 Misc. 131; *Matter of Bender* v. *Board of Regents,* 262 App. Div. 627.) II. The charges were at most trivial or technical, showing a mere error of judgment without bad faith or evil purpose. (*Matter of Griffin* v. *Thompson,* 202 N. Y. 104.)

FULD, J. The State Insurance Fund, a State instrumentality established by the Workmen's Compensation Law (art. 6), is a workmen's compensation insurance carrier. As such, in addition to insuring employers against the liability imposed upon them by the compensation law, it is a self-insurer of its own employees. A " due regard to the requirements of its [the fund's] business affairs and its obligations " (Workmen's Compensation Law, § 82, subd. 2) as well as the obvious possibility of collusion, undue influence and divided loyalties, suggested the inadvisability of permitting claims by fund employees to be processed and defended in the ordinary manner. Accordingly, a special procedure was adopted in 1945, which required that (1) the hearing be conducted by a special referee of the Workmen's Compensation Board; (2) a special representative with at least the status of " Division Head " be assigned by the State Insurance Fund to represent it and protect its interests at the hearing; (3) an impartial specialist be designated by the board to conduct the medical examination of the employee-claimant; and (4) the record of the hearing be submitted for determination on the merits to a special panel of the board. A memorandum setting forth the regulation and outlining the practice to be followed was sent to the various district offices throughout the State.

The petitioner, Roger Humphrey, for many years in the employ of the fund, was the associate claims examiner in charge of the claims unit in the Buffalo office. Second only in rank and responsibility to the district manager, John J. Keating, he passed upon claims filed in that area, supervised the personnel, and assigned the work to be done. Some months after the initiation of the special procedure, Humphrey filed a claim for compensation on his own behalf, asserting that he had suffered a compensable injury to his arm while moving filing cabinets. The claim remained dormant for about a year; at the end of that time Humphrey proceeded to process it, precisely, except in one respect, as though it were a claim asserted by a non-fund employee.

The first hearing was held before a special referee designated by the board. One of Humphrey's subordinates represented the State Insurance Fund. After routine questioning by the referee alone, and solely to establish that the injury came within the purview of the compensation law, that official adjourned the hearing to allow for Humphrey's medical examination by an impartial specialist. The specialist designated was a physician frequently retained by Humphrey, on behalf of the fund, to examine claimants in cases brought against fund-insured employers. He examined Humphrey, made his report and sent his bill to the fund's office in Buffalo, where Humphrey's subordinates, still handling the matter, approved both report and bill. Two months later, in March, 1947, a further hearing was held, and again one of Humphrey's assistants appeared on behalf of the fund. Contrary to the prescribed procedure, which called for a special referee, a regular referee presided and proceeded to hear and determine the claim. He ruled the injury compensable, found a 25% disability and, not apprised by either Humphrey or his subordinate that he was required to submit the record to the board for determination by a special panel, made an award upon his own initiative for $1,950. Humphrey thereupon immediately requested his subordinates, as a favor to him, to put through the award with speed and dispatch. And, indeed, no time was lost; on the very same day that the notice of award was received, the claim was approved by the Buffalo office and a request for payment sent to New York, and, though it was most uncommon practice, the amount

specified included ten weeks' future compensation in addition to the compensation already accrued.

It was not until that request for payment reached the New York City office that any one in a position of responsibility had the slightest inkling that the fund's associate claims examiner had prosecuted a compensation claim against the fund. Following discovery of the matter, the fund initiated a preliminary investigation and the Workmen's Compensation Board reviewed the case. The result was that the award was disapproved, and charges preferred against Humphrey. It was charged in substance that he had persistently failed and refused to advise his superiors of the pendency of his case and that he had failed and refused to follow or adhere to prescribed procedure, to his own advantage and benefit. After an extensive hearing, at which he was represented by counsel, the fund found Humphrey guilty. He was demoted, removed as head of the claims division of the Buffalo office.

The Appellate Division reversed, its order reciting — in apparent forgetfulness of the limitations upon its powers (see *Matter of Miller* v. *Kling*, 291 N. Y. 65, 69) — that the determination of the fund was annulled " on the law and the facts ".

The special regulation for handling claims by fund employees was, contrary to petitioner's contention, entirely legal and permissible. Quite apart from other considerations, it is clear that section 83 of the Workmen's Compensation Law — providing in part that the fund " shall adopt rules for the conduct of [its] business " — obviously sanctions special rules dealing with matters not provided for by the broad terms of the statute. Rules either in conflict with the provisions of the compensation law or inconsistent with its design and purpose would undoubtedly be invalid, but the regulation before us did not so offend. It neither impaired the rights of claimants seeking compensation nor curtailed the powers of the Workmen's Compensation Board. It simply related to the conduct of the fund's business, its internal management. Aimed at avoiding the possibility of double-dealing and collusion on the part of employees, the regulation was highly salutary, the procedure eminently reasonable.

It is, of course, of no moment that not all of the evidence pointed to petitioner's guilt or conclusively established it. In

a proceeding such as this, brought under article 78 of the Civil Practice Act, the record may be examined only to ascertain whether there is " substantial evidence " to justify the administrative determination. (See *Matter of Miller* v. *Kling, supra,* p. 69; *Matter of Friedel* v. *Board of Regents,* 296 N. Y. 347, 352; *Matter of Stanton* v. *Valentine,* 293 N. Y. 836.) In other words — and the rule is settled beyond all cavil — once the administrative body, after proper hearing, has made a determination, the court, lacking power to review " on the facts ", may annul it " for errors of law only ". (*Matter of Miller* v. *Kling, supra,* p. 69; see, also, *Matter of Epstein* v. *Board of Regents,* 295 N. Y. 154, 157; *Matter of Friedel* v. *Board of Regents, supra,* p. 352.)

With the problem thus narrowed, our decision is clear. A copy of the memorandum advising of the modified procedure was earmarked for Humphrey, and Mr. Keating testified that, after he or his secretary had delivered it, he had discussed its contents with him. In addition, Humphrey actually admitted in the course of the hearing that he was aware of the directive's substance. He had known, he acknowledged, that " there was a memorandum sent "; he had discussed the matter with Mr. Keating; and he had instructed his subordinates concerning the procedure to be followed where fund employees were claimants. Indeed, he went so far as to admit that he " knew there was some deviation from " the prescribed system in the handling of his case.

Clearly, as even this brief resumé makes evident, the record contains substantial support for the fund's determination. Petitioner's own self-interest and divided loyalty were apparent and, on the evidence before it, the fund was fully warranted in concluding that the prescribed practice not only dictated the procedure to be followed but stamped as improper the course pursued by petitioner.

The order of the Appellate Division should be reversed and the determination of the State Insurance Fund confirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur.

Order reversed, etc.