In the Matter of EUGENE J. PASK, Petitioner, *v.* WILLIAM S. HULTS, as Commissioner of Motor Vehicles of the State of New York, Respondent.

Fourth Department, May 16, 1968.

*Moot, Sprague, Marcy, Landy & Fernbach* (*Norman E. Joslin* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Richard A. Dutcher* of counsel), for respondent.

DEL VECCHIO, J. This is a proceeding to review the determination of respondent revoking petitioner's operator's license after a hearing.

The minority contends that there is no substantial evidence of driving " in a manner showing a reckless disregard for life or property of others ", which was the basis for the revocation, and cites cases which in our opinion are not authority for annulling the determination. Respondent failed to file a brief.

Petitioner was represented by counsel at the hearing and the facts are not in dispute: On August 5, 1963 at about 4:35 P.M., petitioner, then 21 years old, alone in his automobile, was operating it westerly at 35 to 40 miles per hour on a two-lane, straight, level, open country highway with no overhanging trees or obstructions along the shoulders. His car struck a boy lawfully riding a bicycle westerly along the right-hand side of the highway between a foot and a foot and a half from the right edge. The impact threw the boy against the windshield, causing him to sustain severe injuries to his neck, head, back and leg resulting in death three hours later. As a result of the collision the windshield of petitioner's car was smashed and a headlight broken, the bicycle was " pretty well damaged " and the blacktop asphalt pavement was gouged. After the accident the boy lay 18 feet beyond the point of impact, the bicycle 15 feet beyond the boy, and the car approximately 40 feet beyond the boy. There was no evidence of skid marks leading to the point of impact and the gouges were between the point of impact and the bicycle.

Petitioner testified that this was a nice summer day; that there were no other motor vehicles traveling along the highway; that he did not see the boy before the right fender of his car

struck him, and that he could not explain why he did not see the bicycle until the moment of impact but admitted he should have seen it.

Upon these facts we do not believe that it can fairly be held as a matter of law that petitioner was guilty of no more than ordinary negligence. There could be little question that petitioner operated his vehicle " in a manner which unreasonably interfere[d] with the free and proper use of the public highway "; this of course is reckless driving (Vehicle and Traffic Law, § 1190) and means the same as gross negligence or a reckless disregard for life or property of others (Vehicle and Traffic Law, § 510; *Matter of Coniber* v. *Hults,* 15 A D 2d 252; cf. *People* v. *Armlin,* 6 N Y 2d 231). Failure to observe and to avoid have been recognized as determinative facts in the Commissioner's evaluation. In *Matter of Cohn* v. *Fletcher* (297 N. Y. 851), where petitioner testified that he did not see the pedestrian until he " was almost on top of him " and that there was no other traffic or anything to obscure his vision, the order revoking his license was affirmed. In *Matter of Deutsch* v. *Hults* (10 A D 2d 724), the Commissioner's determination was confirmed where no evidence was adduced which tended to explain the fact that petitioner did not see the pedestrian in time to avoid the accident, although the weather was clear, the accident occurred during daylight and the visibility was good. (See, also, *Matter of Donahue* v. *Fletcher,* 299 N. Y. 227; *Matter of Domino* v. *Hults,* 18 A D 2d 1117.) In *Matter of Karp* v. *Hults* (9 N Y 2d 857), the court affirmed a finding that petitioner " by his failure to observe this object in front of him and by his failure to use the unused portion of the highway to avoid striking the rear of the vehicle in front of him " showed " a reckless disregard for life and property of others ".

In *Matter of Beatty* v. *Kelly* (9 A D 2d 1001); *Matter of Crawford* v. *Fletcher* (278 App. Div. 1017) and *Matter of Jenson* v. *Fletcher* (277 App. Div. 454), cited in the minority opinion, the petitioner himself gave a reason for his failure to avoid the accident — involuntarily falling asleep at the wheel. In the present case petitioner gave no explanation for striking the boy; he did not testify either that he involuntarily fell asleep or that he was blinded by the sun.

In our opinion the finding " that Mr. Pask was not paying attention to the road, but was permitting his thoughts to be elsewhere, and that he failed to notice the bicyclist, which he should certainly have been able to observe " is supported by the record. Although petitioner was driving westerly toward the sun his unqualified answer that he could see straight ahead quite a dis-

tance would warrant a finding that he was not blinded by the sun and that his assumption the boy must have come from a side road or driveway is incredible. The record shows that there was no side road or driveway in the vicinity of the accident. Furthermore the conclusion of the Deputy Sheriff not to issue a summons as a result of the accident has no bearing on the correctness of the Commissioner's determination.

" Where casual, or slight negligence ends, and gross negligence begins may be difficult to determine, but essentially the issue is predominantly one of fact and not of law. Where there is room for the trier of the facts to draw different conclusions certainly the issue is one of fact." (*Matter of Kelley* v. *Kelly*, 5 A D 2d 913, 914.) We should not disturb the Commissioner's factual determination which is justified and supported by substantial evidence. (*Matter of Burke* v. *Bromberger*, 300 N. Y. 248; *Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327, 331–332.)

With a clear, unobstructed view petitioner was bound to see what by the proper use of his senses he might have seen. (*Weigand* v. *United Traction Co.*, 221 N. Y. 39.) By failing to exercise due care to avoid the collision; by failing to see the boy riding the bicycle along the right side of the highway; by failing to use the unused portion of the highway; by failing to have his car under proper control or sound a warning before striking the bicycle, and by striking the boy with such force as to inflict fatal injuries, petitioner demonstrated that he was not paying attention to the road but was permitting his thoughts to be elsewhere. Such conduct constituted more than ordinary negligence on his part, and evinced a reckless disregard of the consequences of such conduct, an indifference to the rights of others, and an unreasonable interference with the free and proper use of the public highway.

We conclude that it is difficult to visualize a clearer case of reckless disregard for the life or property of others. There was no explanation given by the petitioner as to why he ran this boy down. The minority seems to place stress on the fact that the order of revocation was made in 1963 and that a proceeding under article 78 of the CPLR, to review that order was then instituted and that, on December 4, 1963, the order was stayed pending such review; further, that no motion was made to dismiss the proceeding for failure to prosecute and that, in the meantime, the Commissioner had renewed petitioner's driver's license. It is claimed that these matters are inconsistent with the determination of the Commissioner which we are now reviewing.

We are not here concerned with the activities or inactivities of the Commissioner since the happening of the accident. Whether the Commissioner's subsequent attitude was incorrect or improper has nothing whatsoever to do with the manner in which this boy was run down by the petitioner and, therefore, these matters should not be considered. Recklessness of this type should not be excused because of subsequent matters which have no bearing whatsoever on whether petitioner was reckless at the time of the accident.

Accordingly, the determination should be confirmed.

WITMER, J. (dissenting). We dissent and vote to annul the Commissioner's determination.

The facts stated in the majority opinion are correct except that Deputy Sheriff Hinman who investigated the accident testified that he did not have his accident report with him, but said, "I know there were skid marks." Where they were does not appear. To the facts set forth in the majority opinion should be added that petitioner was driving westerly into the sun; he had not had any alcoholic beverage; and he was on his way to pick up his fiancee to go to see their pastor to arrange for their marriage. In addition, the record shows the following questions by the Referee and answers by petitioner:

"Q. How do you account for the fact that you did not see the bicyclist before? A. I assume he must have come from a side road or a driveway.

"Q. Did you see him enter the highway? A. No.

"Q. Were you paying attention to what you were doing? A. Yes.

"Q. Were you paying attention to the roadway? A. Yes.

"Q. You could see straight ahead quite a distance, couldn't you? A. Yes.

"Q. What do you think you were thinking — were you thinking of your intended wedding? A. Probably, yes, that was on my mind.

"Q. You were not paying as much attention to the road? A. No, I would not say that. I was driving with care.

"Q. How fast were you going? A. Between thirty-five and forty."

The Deputy Sheriff testified that petitioner was not charged with a traffic law violation. In answer to the Referee's question in this regard he said: "No, Sir, we did not. Through our investigation we could not, and from his statements, issue a summons."

Despite the above-quoted testimony given by the petitioner, the Referee incorrectly found that petitioner admitted that he

was "not paying enough attention to the highway"; and he added: "There seems to be no other explanation for his failure to observe the bicyclist before this time. This is true even though he was proceeding westerly toward the sun"; and he concluded: "I find gross negligence on the part of Mr. Pask as the cause of this accident, in that Mr. Pask was not paying attention to the road, but was permitting his thoughts to be elsewhere, and that he failed to notice the bicyclist, which he should certainly have been able to observe."

Upon that finding petitioner's license was revoked under paragraph (e) of subdivision 3 of section 510 of the Vehicle and Traffic Law for gross negligence in the operation of a motor vehicle.

We recognize that in certain cases of unexplained and unexcused serious accidents, revocations of the driver's license under the above section of the Vehicle and Traffic Law have been confirmed (see cases cited in majority opinion). In the case at bar, however, we find no basis in the record (apart from the fact of the emotional element arising from the serious result of the accident) for a finding that petitioner's conduct constituted gross negligence and a reckless disregard for life and property of others. There was nothing about petitioner's condition, nor the evidence of his operation of the automobile to justify a finding of gross negligence. Petitioner was driving into the sun, and that could be an explanation for the accident, although he did not assert it. He could have had a momentary loss of consciousness, from reverie or otherwise, but such would not constitute gross negligence without more (*Matter of Beatty* v. *Kelly*, 9 A D 2d 1001; *Matter of Crawford* v. *Fletcher*, 278 App. Div. 1017; *Matter of Jenson* v. *Fletcher*, 277 App. Div. 454). The police officers who investigated the accident could find no cause for placing a charge against petitioner. There is no substantial evidence in this record upon which petitioner could properly be charged with more than ordinary negligence; and such is the holding of many cases (*Matter of Ferguson* v. *Kelly*, 11 A D 2d 846; *Matter of Renaud* v. *Kelly*, 10 A D 2d 580; *Matter of Beatty* v. *Kelly*, *supra*; *Matter of Harris* v. *Kelly*, 9 A D 2d 785; *Matter of Wagner* v. *Hults*, 9 A D 2d 639). In the *Ferguson* case (*supra*, p. 847), the court said: "while the failure to see the approaching car and to yield the right of way may have constituted ordinary negligence the petitioner's actions did not evince that disregard of the consequences thereof or that indifference to the rights of others which separates gross negligence from ordinary negligence in both quality and degree. In our view there is a lack of

substantial evidence in this record to support the determination of the Commissioner.''

Moreover, it is noted that the accident occurred on August 5, 1963; the order of revocation was made December 2, effective December 7, 1963; this article 78 proceeding to review the determination was instituted December 4, 1963; and the proceeding then lay dormant for over 4 years. Not only did respondent Commissioner fail to move to dismiss the proceeding for failure to prosecute, but the court was informed on the argument, the Commissioner duly renewed petitioner's driver's license in the meantime. This action, and lack of action, by the Commissioner is inconsistent with his determination. Justice calls for annulment of the determination.

Accordingly, the determination of the Commissioner should be annulled.

WILLIAMS, P. J., and GOLDMAN, J., concur with DEL VECCHIO, J.; WITMER, J., dissents and votes to annul the determination, in opinion, in which MARSH, J., concurs.

Determination confirmed, without costs.