In the Matter of ROBERT E. CROSSON, Petitioner, v. SIMEON GOLAR et al., Constituting the New York City Housing Authority, Respondents.

First Department, September 24, 1974.

*Eric B. Schoenfeld* of counsel (*Waleck & Cartafalsa,* attorneys), for petitioner.

*Joyce Lazoff* of counsel (*Edward W. Norton, General Counsel,* attorney), for respondents.

NUNEZ, J. This is a proceeding under CPLR article 78, transferred to this court by order entered in the Supreme Court, New York County on June 4, 1973 (GREENFIELD, J.) to review a determination of respondents, constituting the New York City Housing Authority, which dismissed petitioner from his employment as a housing fireman.

Petitioner, 45 years of age, father of six children and honorably discharged after service in the United States Navy for a period of 3½ years during World War II, was employed as a housing fireman by the Housing Authority for a period of more than 23 years, from April, 1949 to August, 1972. On March 20, 1972, charges of misconduct were preferred against petitioner. He was accused of having tampered with a time clock at Albany Houses on 66 occasions from October 4, 1970 to January 28, 1972. The charge reads: " On or about the dates shown below, you tampered with the time clock at Albany Houses and, with intent to deceive and defraud, you falsified your time card." Petitioner denied the charges and a hearing followed. The

hearing officer found that petitioner had falsified his time card on 43 of the 66 times charged and recommended that he be dismissed. The Housing Authority followed the recommendation and terminated petitioner's employment as of August 16, 1972.

Although petitioner was charged with falsification of his time card, the thrust of the charges as developed in respondent's brief is that petitioner was absent from the performance of his duties without leave, notice or excuse. But be the charge tampering with the time clock with intent to defraud or that he was absent from his job, after a careful examination of the record, we find that there was no substantial evidence on the whole record to establish the charges against petitioner.

Respondent called as its first witness Mr. John Dobbin, who had been manager of Albany Houses for one year prior to April 19, 1972. The essence of his testimony was that there appeared in many of petitioner's time cards a misalignment between the date and time of day punched thereon by the time clock. However, he admitted that he had not inspected or tested the clock in question, nor did he know that it was the same clock at Albany Houses at the time of the hearing or at any other relevant time. On the testimony of this witness the petitioner's time cards were received in evidence. We agree with the trial officer who observed that Mr. Dobbin's testimony was neither " conclusive or even supporting of any possible claim of irregularity on the part of the respondent [petitioner herein]."

The second witness on behalf of the respondent was Mr. Isidore Gold, Supervisor of the Project Audit Section. He testified that he did not examine the subject time clock, nor did he know if it had been functioning properly; and although he had no expertise vis-à-vis a time clock, he opined that if petitioner's time cards reflected a misalignment between the stamped date and hour, that it generally means there were two punches made at two different times. He did not know whether a misalignment could be due to an improper functioning of the machine, but he had never before heard that misalignments were caused by the machine.

The Authority rested at the conclusion of Mr. Gold's testimony. However, at a later date and after petitioner had offered uncontradicted testimony of the malfunctioning of the time clock, the Authority reopened its case. Mr. John Carver, a mechanic and salesman with the Cincinnati Recorder Distributors of New York from whom the job clock model in question was obtained, was called by the Authority to illustrate and explain the operation of a wheel assembly unit. He demon-

strated how a time card is punched on a time clock with a wheel assembly model similar to that used at the Albany Houses where petitioner had punched his cards. Petitioner's time cards were exhibited to Mr. Carver and he was asked if the misalignment thereon would be possible without tampering with the machine. Some of these cards, the witness indicated, could have been punched without tampering. Those that the witness testified could have been properly punched were eliminated from the trial officer's finding of guilt. Mr. Carver had not visited Albany Houses, nor was the time clock in question exhibited to him. The Superintendent of Albany Houses, the Authority's final witness, testified that the wheel used by Mr. Carver was similar to the type of wheel used in the job clocks at Albany Houses.

Petitioner denied having ever tampered with the clock and denied falsifying his time. Petitioner and five other witnesses, all employees of the Authority and users of the same time clock, testified to the malfunctioning of the clock, to their unheeded complaints about the clock and to their efforts to have it repaired. This testimony stands uncontradicted.

That the nub of the charge against petitioner is not the tampering with the time clock, but rather that he was absent from the performance of his duties without excuse, appears clear from a reading of those portions of the respondent's brief in which it is asserted that the irregularities on petitioner's cards were discovered as a result of an investigation into complaints from tenants that they were not receiving heat or hot water early in the morning, and the assertion that such absences would result in discomfort to the tenants and possible "inherent danger arising when a fireman absents himself without notice so that another may stand watch in his stead".

The time cards were the only hard evidence against petitioner. Respondent, in its brief, states that the witnesses for the Authority "were called in order to aid the Trial Officer in examining the cards and in understanding the mechanics of the job-clock model on which Petitioner had punched these cards." Yet, when we called for the production of the cards in evidence, we were informed by respondent's counsel that there had been a burglary in the office where they were kept, the cards were missing and could not be produced for our examination. Respondent asserts that the irregularities in petitioner's time cards were discovered as a result of an investigation into complaints from tenants living in the Albany Houses that they were not receiving heat or hot water early in the morning. Under these circumstances it would appear to be a simple matter to establish by direct evi-

dence that petitioner was either late or absent from his duties. But incredibly, the only evidence produced by the " investigation " is the missing time cards.

On this record we cannot fairly conclude that the Authority met its burden of proving petitioner's misconduct as required under subdivision 2 of section 75 of the Civil Service Law. It appears from the trial officer's report that petitioner was relieved of his position per force of his work record, rather than of a guilty finding of the charges against him. His report recites the contents of petitioner's personnel folder during his more than 23 years of employment. No specific findings of fact are made concerning the charges against petitioner. The trial officer merely concludes that the " evidence adduced at the hearing substantiated the charge " against the petitioner. That petitioner's entire prior working record was an important consideration in the trial officer's recommendation of dismissal is conceded by respondent in its brief: " On the basis of this testimony and his examination of the 65 time cards which Petitioner was charged with falsifying and the lengthy history of Petitioner's failures to perform his duties over the entire period of his employment — all of which Petitioner had been repeatedly warned about or disciplined for — the trial officer recommended that Petitioner be dismissed." Petitioner was called upon to answer and defend against the specific charges made against him. No mention was made of prior complaints against petitioner. Subdivision 2 of section 75 of the Civil Service Law requires specific written charges. He may not be removed without compliance therewith.

The scope of judicial review of quasi-judicial determinations of administrative tribunals is governed by the " substantial evidence " rule, i.e., whether on the whole record there was substantial evidence to support the administrative determination. After a careful examination of the record, we are unanimous in our conclusion that the charges against Mr. Crosson have not been established. (*Matter of Emerman* v. *Nathan,* 34 A D 2d 282; *Matter of Stork Rest.* v. *Boland,* 282 N. Y. 256; *Matter of Lynch's Bldrs. Rest.* v. *O'Connell,* 303 N. Y. 408; *Matter of Humphrey* v. *State Ins. Fund,* 298 N. Y. 327; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Phinn* v. *Kross,* 8 A D 2d 132.)

The determination of the New York City Housing Authority dismissing petitioner should, therefore, be annulled on the law, without costs, and petitioner reinstated.

Settle order.

KUPFERMAN, J. (dissenting in part).   Under the authority of *Matter of Pell* v. *Board of Educ.* (34 N Y 2d 222) and the prior work record of the petitioner, there is a rational basis for the determination by the New York City Housing Authority. Unfortunately, a good deal of the hearing had to do with testimony regarding the time clock and the time cards, which was inconclusive.   As the majority points out, there might have been a better method of substantiating the charges.

Under the circumstances, the matter should be remanded for a further hearing.   (*Matter of McQueen* v. *New York City Tr. Auth.*, 34 N Y 2d 343.)

McGIVERN, P. J., MARKEWICH and CAPOZZOLI, JJ., concur with NUNEZ, J.; KUPFERMAN, J., dissents in part in an opinion.

Determination of the New York City Housing Authority, dated August 10, 1972, annulled, on the law, without costs and without disbursements, and petitioner reinstated.

Settle order on notice.