OPINION OF THE COURT
Sebastian Leone, J.
The Superintendent of Insurance (Superintendent) moves to confirm the report of Steve C. Arniotes, referee appointed by the court to hear and report on the recommendation of the Superintendent to disallow the claim of Arcade Cleaning Contractors (Arcade); more particularly the rejection of Arcade’s demand for payment of its claim out of the “Security Fund” established pursuant to sections 333 and 334 of the Insurance Law.
Max E. Greenberg, Cantor & Reiss, attorneys for Prince Carpentry, Inc., a claimant similarly situated and who will be directly affected by the decision of this court, move to appear as amicus curiae. Their motion is granted and their well-written brief has been considered by the court.
In this suit for confirmance of the referee’s report this court is called upon, without prior precedent, to construe *72 subdivision 15 of section 46 and subdivision 2 of section 334 of the Insurance Law and to establish as law whether insured who obtained liability insurance coverage against third-party claims in addition to workers’ compensation insurance are entitled to share in or have their claim paid out of the “Security Fund”, when their casualty insurer becomes insolvent and is taken over by the Superintendent.
The facts have been stipulated, and as are essential for this court’s determination are as follows:
An employee of Arcade, during the course of her employment, was injured on the premises of the New York Daily News Syndicate (The News) and instituted suit against The News. The News then joined Arcade as a third-party defendant on the basis of both common-law and contractual indemnification. Arcade at all times had two types of insurance with two different companies, one for workers’ compensation coverage and the other with Consolidated Mutual Insurance Company (Consolidated) for the liability that was sought to be imposed upon it by The News. The News’ action against Arcade was initially defended by Consolidated in accordance with its obligations under its policy, and thereafter and upon its being declared an insolvent, the New York State Insurance Liquidation Bureau continued the defense of The News’ third-party action. The employee’s claim was settled. The News and Arcade, in acknowledging their separate liabilities arising out of the employee’s action agreed to share The News’ settlement with the employee, by Arcade paying $1,500, and The News paying $1,000. However, Arcade’s payment was made without prejudice to its claim against the security fund and was made with the approval of “the Liquidation Bureau upon agreement that the claim of Arcade against the Security Fund be referred for judicial determination”.
The referee appointed to hear and report, agreed with the interpretation of the Superintendent of subdivision 15 of section 46 and subdivision 2 of section 334 of the Insurance Law in rejecting Arcade’s claim, and stated that the Superintendent’s “conclusion not appearing to be irrational or unreasonable, his interpretation and resulting decision must be upheld”.
*73 Basically, the Superintendent’s contentions as confirmed by the referee are:
(a) That subdivision 15 of section 46 of the Insurance Law in providing “‘“Workmen’s compensation and employer’s liability insurance,” meaning insurance against the legal liability, whether imposed by common law or by statute or assumed by contract, of any employer for the death or disablement of, or injury to, his or its employee’ includes Arcade’s policy with Consolidated because the statute when it included ‘ “employer’s liability insurance” * * * assumed by contract’ was meant to apply to indemnification claims.” (Referee’s report, pp 3-4.) Thus, when Arcade “ ‘assume[s] * * * by contract’ liability for injury to [its] employee [it created] the kind of situation [that] is obviously one of a third party claim * * * for contractual indemnification for injuries to [its] employee” and consequently falls within the ambit of subdivision 15 of section 46 of the Insurance Law.
(b) “Section 334(2)(ii) of the Insurance Law specifies ‘kinds of insurance’ policies listed in Section 46 of the Insurance Law to which the Security Fund may make payment * * * Specifically omitted was any mention of section 46(15) which therefore, quite clearly means that claims arising out of the types of insurance listed in section 46(15) are not to be, and cannot be, paid from the Security Fund”. (Referee’s report, p 2.)
Before this court undertakes to construe subdivision 15 of section 46 and section 334 (subd 2, par [ii]) of the Insurance Law, it will first focus upon the distinctions of insurance coverage as they relate to protective immunity from loss by an employer when an employee is injured in the course of employment.
There is no difference of opinion when an employee is injured and seeks compensation for his injury from his employer. In such case the workers’ compensation policy fully protects the employer. However, where the employee determines that he or she has a far superior remedy against a third party then, again, there is no disagreement that the workers’ compensation policy does not cover the employer against such a contingency. To obtain protection *74 from a third-party cross claim, the employer must procure and pay for an entirely different type of insurance coverage, wholly separate from any claim of the employee that is encompassed by a workers’ compensation policy.
In Dole v Dow Chem. Co. (30 NY2d 143, 148), the court, in enunciating the new doctrine of rights of joint tortfeasors, particularly as against those not joined in an action by an injured party, examined the enactment of CPLR 1401 permitting claims for contribution against a nonparty joint tort-feasor, and stated that the “ ‘active-passive’ ” negligence concept of liability “became a measure of degree of differential culpability, although the degree was a large one * * * The result has been that there has in fact emerged from the statutory change and from judicial decisions an actual apportionment among those who participate responsibly in actionable torts.”
Dole’s suit was not against the employer, Urban, but against Dow Chemical, the third party. The court would not accept Chief Judge Crane’s recommendation that “the liability of the employer should be limited ‘in amount’ to its exposure under the Workmen’s Compensation Law” (Dole v Dow Chem. Co., supra, p 152). “The cause pleaded by Dow against Urban for indemnity is a very different kind of action” from that of the employee (p 152). Thus, the employer’s protective insurance policies, of necessity, must be different and must distinctly provide for separate coverage in each instance.
Following Dole v Dow (supra), the court, in Graphic Arts Mut. Ins. Co. v Baker’s Mut. Ins. Co. of N. Y. (45 NY2d 551, 557) emphasized the distinction between the two liabilities of an employer when an employee is injured during the course of employment, stating, “The right under the Dole-Dow doctrine to seek equitable apportionment * * * is not one intended for the benefit of the injured claimant * * * Thus, to urge on behalf of Graphic that the third-party claim against Chimes [the employer] assumes legally the color of the claim of Wacht [its injured employee] does not withstand analysis.”
Green Bus Lines v Consolidated Mut. Ins. Co. (74 AD2d 136, 146, mot for lv to app den 52 NY2d 701), relied upon by the referee for his holding devolves upon an exclusion *75 ary clause in a policy (not here involved). Nevertheless, the court reiterated the distinction of the two types of liability by stating (p 146) “In Graphic Arts the Court of Appeals disposed of the bodily injury to an employee exclusion by holding that the third-party action did not seek to recover for such an injury, but rather sought equitable apportionment based on relative culpability thereby affecting the distributive responsibilities of tort-feasors inter sese. * * * [T]he third-party action against the employer did not legally assume the color of the personal injury claim of its employee asserted against the third-party plaintiff”.
Under the “Stipulation of Facts” The News and Arcade acknowledged their several liability as joint tort-feasors and agreed to an apportionment of liability between themselves. Consolidated and the Superintendent of Insurance recognized Arcade’s liability to The News and the policy obligation to immunize Arcade against The News’ claim as third-party plaintiff.
The clear issue presented to this court is whether the Superintendent and the referee may declare Consolidated’s policy to Arcade, though not a workers’ compensation policy, but sold as a protection against third-party claims, nevertheless furnishes Arcade no protection against loss and no sharing or payment from the security fund as obtains for other liability policies of Consolidated.
Before considering the issue, the court notes that “statutory construction is the function of the courts ‘but where the question is one of * * * a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court’s function is limited’ * * * The administrative determination is to be accepted by the courts ‘if it has “warrant in the record” and a reasonable basis in law’ * * * ‘The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body’ ” (Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108). The court further notes that “Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the gov *76 ernmental agency charged with the responsibility for administration of the statute. * * * Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weighi” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459; see, also, Servomation Corp. v State Tax Comm., 51 NY2d 608).
The acceptance of the construction of the Superintendent of Insurance as confirmed by the referee may be a facile disposition of Arcade’s claim, but then this court will have failed in its judicial function to construe subdivision 15 of section 46 and section 334 (subd 2-, par [ii]) of the Insurance Law, particularly since no “operational practices” or “evaluation of factual data and inferences to be drawn therefrom” are involved. The mandated burden upon this court is to analyze petitioner’s premise, structured on the phrase “assumed by contract” and determine its validity in the context of a full reading of the relevant statutes and of the manifest intent and design of the Legislature to protect the public when it created the “Security Fund.”
Fundamental to interpretation of a statute “we should look to the enactment as a whole, to discern ‘the purpose and policy underlying the statute, and [give] the words a meaning which serves, rather than defeats, the ends intended by the Legislature’ ” (Matter of Allcity Ins. Co. [Kondak], 66 AD2d 531, 535, mot for lv to app den 48 NY2d 629). We may not, and “[n]o rule or construction * * * permits the segregation of a few words from their context and from all the rest of the section * * * for purposes of construction” (Matter of Albano v Kirby, 36 NY2d 526, 530).
Section 46 of the Insurance Law is entitled, “Kinds of insurance authorized”. The various subdivisions describe and define the different types of insurance be it “Life insurance”, “Equities”, “Accident and health insurance”, etc. Subdivision 15 of section 46 of the Insurance Law *77 describes and defines “Workmen’s compensation and employer’s liability insurance”, a specific class limited to coverage “for the death or disablement of, or injury to, his or its employee” (emphasis added). The talismanic keys are the simple two-letter words exclusively descriptive “of” and directed “to” the injured employee of the employer. Simple unstrained reading reveals that nothing in this section refers, even by implication, to injuries or loss sustained by anyone (third parties) not employees “of an employer”. The test of whether one is an employee and required to be covered is governed by the subdivision’s definition of the employer’s liability “whether imposed by common law or by statute or assumed by contract”. The “assumed by contract” is the contract with the employee granting the employee workers’ compensation benefits. It is not a contract of indemnification of a person other than the employee. This subdivision is concerned only with the protection of employees. Enforcing this protection of employees the Legislature enacted sections 25-a and 107 of the Workers’ Compensation Law creating a special fund to insure payment of an award to an employee who after a lapse of years seeks compensation for an injury or in the event an insurer becomes insolvent. Again the concern is only for the employees of an employer be his rights fixed under the common law, by statute or by an “assumed contract” with the employer.
The rational and clear intention of the Legislature to protect an employee of the employer is further demonstrated by the addition of section 334 (subd 2, par [ii], cl [b]) of the Insurance Law. That subdivision provides for a disabled employee to share in the “Security Fund” of insurers since the disablement is not related to his or her employment and is not therefore covered by workers’ compensation insurance. To make certain that there is no duplicate payment the Legislature specifically enacted section 206 of the Workers’ Compensation Law so as to permit deduction of the disability payments received by the employee from any subsequent award of workers’ compensation.
To better grasp the intent of the Legislature to grant full protection to the “injured” who sustain a loss that was *78 covered by insurance, the Legislature included in the ambit of the protective “Security Fund” all “kinds of insurance” except workers’ compensation. The concern of the Legislature, by the enactment of section 334 of the Insurance Law, was to protect the public purchasing a policy of insurance other than workers’ compensation to have some means of relief when the insurer becomes insolvent and unable to meet its obligations.
Section 333 of the Insurance Law as originally enacted was and still is entitled “Motor vehicle liability security fund”. However, section 334 of the Insurance Law subsequently enacted by the Legislature provides: “On and after September first, nineteen hundred sixty-nine, the security fund established pursuant to section three hundred thirty-three of this chapter shall be known as ‘the property and liability insurance security fund’ and shall be operated pursuant to the provisions of such section, except where such provisions are inconsistent with the provisions of this section.” Thus, the Legislature broadened the scope of the “Security Fund” to include “property and liability” policies, to manifestly safeguard all insureds with liability policies (excluding workers’ compensation) against an insurance company’s insolvency and inability to pay a loss. This over-all design of the Legislature becomes apparent both under subdivisions 2 and 3 of section 333 and subdivisions 3 and 4 of section 334 of the Insurance law. Each section requires insurance companies as a privilege of writing liability insurance, to contribute to the “Security Fund.” No exclusion is made nor right of deduction is given to the insurance carrier from their contribution to the fund because the premiums received on the liability policy provided for third-party indemnification. Neither the Superintendent nor the referee make any such claim nor do they allege that contributions were made on those policies to the workers’ fund especially created for employees.
Most significant, section 106 of the Workers’ Compensation Law defines a “Stock carrier” as one “authorized to transact the business of workmen’s compensation insurance in this state.” Section 107 of the Insurance Law limits contributions to the fund to “stock carriers” (those receiv *79 ing premiums on workers’ compensation insurance policies — excluding third-party liability insurance carriers).
The untenable position of the Superintendent of Insurance and of the referee is that though Consolidated’s contributions to the “Security Fund” were by statutory command computed upon and included all premiums received on its third-party liability policies, nevertheless those insureds are barred from sharing in the “Security Fund.”
It was the clear understanding of Consolidated and the Superintendent that Arcade had to be defended and did defend Arcade on The News’ claim, because Consolidated’s policy to Arcade was “insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability * * * arising out of the death or injury of any person * * * but not including any kind of insurance specified in paragraph fifteen [workers’ compensation].” (Insurance Law, § 46, subd 13.) But subdivision 13 policies of insurance are specifically included in subdivision 2 of section 334 of the Insurance Law for sharing in or payment out of the security fund.
There can be no argument that Arcade’s policy with Consolidated is completely unrelated to workers’ compensation. The policy was specifically obtained and the premium paid to insure against such a claim as was made by The News. Consolidated and the Superintendent never questioned their obligation to Arcade in their defense of The News’ claim. How may this court permit them to declare Arcade and others wholly unprotected by the “Security Fund.” To give sanction to such a declaration is to sanction the reading of the phrase “assumed by contract” completely out of context of workers’ compensation and of greater concern to the court is that it would be granting judicial approval to a frustration of the design and intent of the Legislature to safeguard policyholders by one fund or another against the contingency of an insurance carrier becoming insolvent and unable to meet its obligations. “Unquestionably, where the rules and regulations [or a determination of the Superintendent of Insurance and of the referee] are in conflict with the provisions of the statute or inconsistent with its design and purpose, they *80 are to be held invalid” (Connolly v O’Malley, 17 AD2d 411, 417).
Accordingly, this court holds that the determination of the Superintendent of Insurance confirmed by the referee is invalid. Petitioner’s motion is denied.